**James Douglas HARRIS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–03–00258–CR.**

Court of Appeals of Texas, Waco.

Feb. 23, 2005.

H. Fred Neale, Mexia, for appellant.

Roy Defriend, Limestone County Dist. Atty., Lauri J. Anderson and K C Odom, Limestone County Assts. Dist. Attys., Groesbeck, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

The trial court revoked James Douglas Harris's community supervision for burglary and imposed the original sentence of ten years' imprisonment. Harris contends in five issues that: (1) the court improperly predetermined that it would revoke his community supervision and impose the original sentence; (2) an assigned judge abused his discretion by denying Harris's recusal motion and his continuance motion; (3) the court failed to act as a neutral and detached decision maker; (4) the State failed to rebut defense evidence pertinent to one of the grounds for revocation; and (5) the court erred by failing to hold a separate punishment hearing after revoking his community supervision. We will affirm.

## Background

Pursuant to a plea bargain, the court on May 29, 2002 sentenced Harris to ten years' imprisonment and a $10,000 fine, suspended imposition of sentence, and placed him on community supervision for ten years. On October 8, the State filed a motion to "adjudicate." [1] This motion alleged that Harris had violated the conditions of community supervision by failing to report on July 1, July 22, and August 5, and by failing to pay $350 per month toward his fine, court costs, and restitution.

At a January 30, 2003 hearing, the parties agreed to a modification of the conditions of community supervision and to allow Harris an additional 90 days to demonstrate that he would comply with the conditions of community supervision. The court approved the parties' agreement and signed an agreed order which the attorneys and Harris's community supervision officer signed as well. The agreed order scheduled a review hearing for May 2.

On March 4, the State filed an amended revocation motion adding allegations that Harris committed a burglary on February 4 and failed to report on March 3.

The revocation hearing was held on June 26. Harris pleaded "true" to the allegations alleged in the original revocation motion and "not true" to the two additional allegations stated in the amended motion. The State called Harris's community supervision officer to prove the failure-to-report and failure-to-pay allegations and other witnesses to prove that he committed the burglary alleged. Harris responded with witnesses to controvert the State's burglary evidence and tendered documentary evidence to the court pur-

1. The State's motion erroneously alleged that Harris had received deferred adjudication. Nevertheless, the parties treated the pleading as a revocation motion. We refer to this motion hereinafter as a revocation motion.

porting to establish that he was in the Dallas County jail when he failed to report on March 3.

The prosecutor[2] questioned the authenticity of the documents offered by Harris. The court agreed that the documents looked suspicious and declined to admit them in evidence. The State obtained a criminal history for Harris which indicated that he was arrested in Dallas on March 30, rather than March 3. Nevertheless, Harris steadfastly denied that he had altered the Dallas County documents in any fashion. The court agreed to delay a ruling on the revocation motion for seven days to give the State an opportunity to verify or refute the authenticity of the documents.

On July 3, Harris filed a *pro se* motion to recuse the judge alleging that she had "predetermined her punishment" as reflected by her comments during the January 30 and June 26 hearings and that he had filed a grievance against her with the State Commission of Judicial Conduct on June 12.

The judge declined to recuse herself and faxed the recusal motion to the presiding judge of the administrative judicial region. The presiding judge assigned the other district judge in Limestone County to hear the recusal motion. At the commencement of the recusal hearing, Harris informed the assigned judge that he wanted the assigned judge to recuse himself as well. The assigned judge delayed the hearing to allow Harris to file a proper recusal motion. In this second recusal motion, Harris also requested a continuance to obtain a record of the January 30 hearing to prove the recusal allegations. The assigned judge declined to recuse himself and referred the matter to the presiding judge, who assigned another judge to hear both recusal motions.

The second assigned judge heard the continuance motion and the recusal motion as to the judge presiding over Harris's revocation and denied both. He declared the second recusal motion (directed to the first assigned judge) to be moot.

The revocation hearing then resumed. The State informed the court that it had been unable to obtain admissible documentation to refute the authenticity of the Dallas County documents Harris offered at the prior hearing but that the March 3 date indicated in those documents is inconsistent with what Harris's criminal history reflects.

The court found all the revocation allegations true except for the burglary allegation and imposed Harris's original ten-year sentence.

## Recusal Motion

■ Harris contends in his second issue that the assigned judge erred by denying his motion for continuance and his motion to recuse the judge presiding over his revocation hearing.

■ The State contends that Harris failed to preserve his complaint regarding the assigned judge's ruling on the recusal motion because the motion was filed less than ten days before the hearing. The State is correct that a recusal motion generally must be filed at least ten days before trial or hearing. *See* Tex.R. Civ. P. 18a(a);[3] *Arnold v. State*, 853 S.W.2d 543,

---

**2.** Apparently Harris himself brought the documents to the hearing, and his attorney did not know about their existence beforehand. Harris's own attorney acknowledged to the court that the documents "looked funny."

**3.** The recusal procedures set out in Rule of Civil Procedure 18a apply in criminal cases. *De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim.App.2004) (orig. proceeding).

544–45 (Tex.Crim.App.1993); *Madden v. State*, 911 S.W.2d 236, 239 (Tex.App.-Waco 1995, pet. ref'd); *accord De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex.Crim.App.2004) (orig. proceeding). However, if the basis for recusal does not become apparent until later, then the defendant preserves the complaint by promptly filing the motion when the basis for recusal comes to light. *See Rosas v. State*, 76 S.W.3d 771, 774 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Martin v. State*, 876 S.W.2d 396, 397 (Tex.App.-Fort Worth 1994, no pet.); *see also Madden*, 911 S.W.2d at 239 (issue not preserved where defendant became aware of possible grounds for recusal at punishment phase but raised issue for first time on appeal).

Here, Harris alleges three grounds for recusal: (1) the judge's comments during the January 30 hearing, (2) the June 12 judicial grievance he filed, and (3) the judge's comments during the June 26 hearing. Harris was well aware of the first two grounds more than ten days before the June 26 hearing. However, he did not seek a recusal on these grounds until after the June 26 hearing. Thus, he has failed to preserve the issue of whether the judge should have been recused because of her comments during the January 30 hearing or because of the June 12 grievance. *See Arnold*, 853 S.W.2d at 544–45; *Madden*, 911 S.W.2d at 239.

Because Harris's recusal motion was untimely with regard to the judge's comments during the January 30 hearing, the assigned judge did not abuse his discretion by denying Harris's continuance motion, by which he sought a delay to obtain a record of the January 30 hearing.

█ We review the denial of a recusal motion under an abuse-of-discretion standard. *See Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex.Crim.App.2000); *Rosas*, 76 S.W.3d at 774. Recusal because of bias is justified when "the movant has provided facts sufficient to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge." *Kemp v. State*, 846 S.W.2d 289, 305 (Tex.Crim.App. 1992); *accord Rosas*, 76 S.W.3d at 774. We will not reverse a recusal decision which lies "within the zone of reasonable disagreement." *Kemp*, 846 S.W.2d at 306 (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g)); *Rosas*, 76 S.W.3d at 774; *accord Wesbrook*, 29 S.W.3d at 120–21.

Harris alleges without elaboration in his recusal motion that the fact that the judge had "predetermined" his sentence is "self evident in the recent hearing on June 26, 2003." At the recusal hearing, Harris testified that the judge "seemed to be agitated" with him during the June 26 hearing and cut off his testimony at one point.

The lion's share of Harris's recusal allegations stem from the comments the judge made during the January 30 hearing. As stated above, Harris did not timely seek a recusal on the basis of these comments. In view of the limited evidence from the June 26 hearing offered to show a basis for recusal, we cannot say that the assigned judge abused his discretion by denying the recusal motion. *See Rosas*, 76 S.W.3d at 775–76. Accordingly, we overrule Harris's second issue.

### Predetermination Of Revocation And Sentencing

█ Harris contends in his first and third issues that he was denied due process because the judge had predetermined that she would revoke his community supervision and impose the original sentence regardless of any mitigating evidence he may present.

Such complaints must be preserved for appellate review. *See* Tex.R.App. P. 33.1(a)(1); *Hull v. State*, 67 S.W.3d 215, 217–18 (Tex.Crim.App.2002); *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex.App.-Texarkana 2002, pet. ref'd). As with Harris's recusal allegations, the primary source for his contention that the judge had predetermined that she would revoke his community supervision and impose the original sentence is the record of the comments the judge made in the January 30 hearing. However, Harris did not voice any objection to the judge presiding over the revocation hearing until he filed his recusal motion, seven days after the June 26 hearing in which the court heard virtually all the evidence on the matter. Therefore, Harris's objection was not timely, and these issues have not been preserved. *See* Tex.R.App. P. 33.1(a)(1); *Hull*, 67 S.W.3d at 217–18; *Teixeira*, 89 S.W.3d at 192. Accordingly, we overrule Harris's first and third issues.

### The Revocation Decision

Harris contends in his fourth issue that the court abused its discretion by finding that he failed to report on March 3, 2003 because the State failed to rebut the evidence he offered to show that he was incarcerated in Dallas County on that date. He contends that a finding on this allegation is critical because the parties agreed at the January 30 hearing that his community supervision would not be revoked unless he committed "new violations."

In examining the portions of the record Harris cites from the January 30 hearing, we find no agreement between the parties that his community supervision would be continued if Harris had no "new violations." Instead, the record reflects that the parties agreed to leave the revocation motion pending for 90 days to allow Harris an opportunity to abide by the conditions of community supervision. As his own attorney stated, "[I]f he doesn't [comply] there would be a hearing set so we could all go forward on the Motion to Revoke."

To overturn a revocation order, a defendant must successfully challenge each finding on which the revocation is based. *See Jones v. State*, 571 S.W.2d 191, 193–94 (Tex.Crim.App. [Panel Op.] 1978); *Joseph v. State*, 3 S.W.3d 627, 640 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Smith v. State*, 790 S.W.2d 366, 367 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd). A defendant cannot challenge a revocation finding on an allegation to which he pleaded "true." *See Cole v. State*, 578 S.W.2d 127, 128 (Tex.Crim.App. [Panel Op.] 1979); *Atchison v. State*, 124 S.W.3d 755, 758 n. 4 (Tex.App.-Austin 2003, pet. ref'd); *Moore v. State*, 11 S.W.3d 495, 498 n. 1 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

Harris pleaded "true" to the two of the four allegations in the revocation motion. He does not challenge the court's findings on these two allegations. Therefore, we cannot say that the court abused its discretion by revoking Harris's community supervision. Accordingly, we overrule his fourth issue.

### Separate Punishment Hearing

Harris contends in his fifth issue that the court erred by failing to hold a separate punishment hearing after deciding to revoke his community supervision. However, he did not preserve this issue for review by objection during the revocation hearing or by motion for new trial. *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex.Crim.App.1999); *Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App.1992) (per curiam); *Liggett v. State*, 998 S.W.2d 733, 736 (Tex.App.-Beaumont 1999, no pet.).

Accordingly, we overrule Harris's fifth issue.

We affirm the judgment.