Nathan Andrew KNIATT, Appellant

v.

The STATE of Texas, Appellee.

No. 10–03–00199–CR.

Court of Appeals of Texas, Waco.

Dec. 5, 2007.

Richard S. Gladden, Attorney At Law, Denton, TX, for Appellant/Relator.

Joe F. Grubbs, Ellis County District Atty., Waxahachie, TX, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## ABATEMENT ORDER ON MOTION FOR REHEARING

PER CURIAM.

The principal issue before us in Appellant Nathan Kniatt's motion for rehearing is whether the trial judge who heard Kniatt's motion to recuse District Judge Gene Knize correctly applied or interpreted the law governing recusal. We will abate this appeal for a new hearing on Kniatt's recusal motion.

## Procedural Background

Kniatt was charged by indictment for possession of methamphetamine. At a pretrial hearing on December 7, 2001, Kniatt's attorney (whom Kniatt had just terminated) and the assistant district attorney informed the trial court either that Kniatt intended to reject the State's plea bargain offer or that Kniatt had reneged on a plea bargain agreement, and that Kniatt wanted to retain new counsel. In response, Judge Knize stated:

> State versus Nathan Kniatt set for trial Monday morning. As I understand from the attorneys they thought they had a plea agreement. In fact they had a plea agreement, and today the defendant has reneged on that, doesn't want the agreement. I've also been informed he wants to fire the lawyer. All that's okay with me. I'll take all this up. Defendant's bond is revoked. He's going to jail pending trial. Have a seat over there, sir. We'll set your trial when we get around to it.

On December 11, 2001, Kniatt returned to the trial court and entered a guilty plea. In accordance with the plea agreement, the trial court deferred adjudication of guilt, placed Kniatt on community supervision for three years, and fined Kniatt $3,000.

The State subsequently filed a motion to revoke Kniatt's community supervision and to proceed with adjudication of guilt. Kniatt filed a pre-conviction application for writ of habeas corpus and a motion to recuse Judge Knize from hearing that application and from hearing the State's motion to proceed with an adjudication of guilt.[1] Judge Marvin Marshall, sitting by assignment, denied the motion to recuse

---

1. On this remand to us, Kniatt has abandoned his motion to recuse Judge Knize from hearing and ruling on the State's motion to revoke and to adjudicate. The recusal motion is thus only directed at Judge Knize's hearing and ruling on Kniatt's habeas application.

after an evidentiary hearing. Judge Knize then heard and denied Kniatt's application for writ of habeas corpus. He also heard and granted the State's motion to revoke and adjudicated Kniatt guilty.

Kniatt appealed the trial court's denial of his request for habeas corpus relief and the order denying his motion to recuse. We held that Kniatt met his burden of showing that his guilty plea was involuntarily given and that the trial court erred in denying Kniatt's habeas corpus application, but we did not reach the recusal issue. *Kniatt v. State*, 157 S.W.3d 83, 86–87 (Tex.App.-Waco 2005), *rev'd*, 206 S.W.3d 657 (Tex.Crim.App.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 667, 166 L.Ed.2d 514 (2006). The Court of Criminal Appeals reversed our judgment and remanded the cause for us to consider Kniatt's recusal issue. *Kniatt v. State*, 206 S.W.3d 657, 665 (Tex.Crim.App.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 667, 166 L.Ed.2d 514 (2006). In an unpublished opinion on remand that we now withdraw by separate order, we held that the assigned judge did not abuse his discretion in denying Kniatt's motion to recuse. Kniatt's motion for rehearing, which primarily alleges that we and the assigned judge misapplied or misinterpreted recusal law, is now before us.

### Standard of Review

We review a ruling denying a defendant's motion to recuse for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex.Crim.App.2000); Tex.R. Civ. P. 18a(f). A recusal decision should not be reversed if it is within the zone of reasonable disagreement. *Id.* at 120–21. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *See State v. Herndon*, 215 S.W.3d 901, 907–08 (Tex.Crim. App.2007); *Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App.1993); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

An appellate court "should reverse the trial court's decision only for an abuse of discretion; that is to say, only when it appears that the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the correct law and the facts viewed in the light most favorable to its legal conclusion." *DuBose v. State*, 915 S.W.2d 493, 497–98 (Tex.Crim.App.1996), *overruled on other grounds by Guzman v. State*, 955 S.W.2d 85, 90 (Tex.Crim.App.1997);[2] *see also In re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex.2001) ("A trial court has no discretion to determine what the law is or in applying the law to the facts and, consequently, the trial court's failure to analyze or apply the law correctly is an abuse of discretion."). A trial court has no discretion to misinterpret the law. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *see also In re Arthur Andersen LLP*, 121 S.W.3d 471, 476 (Tex. App.-Houston [14th Dist.] 2003, orig. proceeding) ("as to legal issues, an error amounting to an abuse of discretion can be

---

**2.** As Judge Holcomb has stated, "As to the determination of controlling legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. A trial court has no discretion in determining what the law is or applying the law to the facts. Thus, a failure by a trial court to analyze or apply the law correctly will constitute an abuse of discretion." *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex.Crim.App. 2004) (Holcomb, J., dissenting) (citing *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999)).

as simple as misinterpreting or misapplying the law").

## Discussion

Kniatt complains that the assigned judge erred by denying his motion to recuse Judge Knize under Texas Rule of Civil Procedure 18b(2)(a) or (b). Kniatt urged recusal under the following provisions of Rule 18b:

A judge shall recuse himself in any proceeding in which:

(a) his impartiality might reasonably be questioned; or

(b) he has ... personal knowledge of disputed evidentiary facts concerning the proceeding.

Tex.R. Civ. P. 18b(2)(a), (b).

During the recusal hearing, the State argued to the assigned judge that Kniatt was required to show that Judge Knize had a bias or prejudice and, citing *Cumpian v. State,* that the motion had to be based on bias arising from an extrajudicial source:[3]

And I believe in a motion to recuse that the burden is going to be on the defendant here to show that the Judge

had some kind of bias or prejudice[4] against him such that he couldn't get a fair hearing from the Judge.

And I have a case that I can cite to the Court that is a court of appeals out of San Antonio, *Cumpian,*[5] ... that says specifically that a motion to recuse has to be based on bias and prejudice by the Judge that's related to extrajudicial matters.

In other words, the Court's rulings in court can't be the basis for motion to recuse. Just because a defendant doesn't like the way that the Judge ruled against him, he can't just make some spurious allegations and the allegations in and of themselves require the Judge to be recused.

In making its ruling from the bench, the assigned judge stated:

In this case I have a narrow area in which I have to operate on these motions to recuse. And based on those parameters, I'm going to deny the motion to recuse in this case.

In the State's Brief on Remand, the State reiterated its position that Kniatt had to show bias arising from an extrajudicial

---

**3.** An extrajudicial source has typically been considered "a source outside the proceeding at hand." *Liteky v. United States,* 510 U.S. 540, 545, 114 S.Ct. 1147, 1152, 127 L.Ed.2d 474 (1994); *see also Roman v. State,* 145 S.W.3d 316, 321 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) ("The plain language meaning of *extrajudicial* then, suggests that a statement made within a judicial proceeding, and repeated in a judicial proceeding, cannot be from an extrajudicial source."). As we show below, in *Liteky,* the Supreme Court articulated a broader meaning of extrajudicial source. *See Liteky,* 510 U.S. at 548–55, 114 S.Ct. at 1152–57.

**4.** The first part of Rule 18b(2)(b) provides that a judge shall recuse himself if "he has a personal bias or prejudice concerning the subject matter or a party." Tex.R. Civ. P.

18b(2)(b). Contrary to the State's arguments at the recusal hearing, Kniatt did not have to show "some kind of bias or prejudice" because he did not move for recusal under the first part of Rule 18b(2)(b) and because, as we hold below, bias arising *only* from an extrajudicial source need not be shown under Rule 18b(2)(a) or the second part of Rule 18b(2)(b), the two provisions on which Kniatt sought recusal.

**5.** *Cumpian v. State,* 812 S.W.2d 88, 91 (Tex. App.-San Antonio 1991, no pet.) (" 'To require recusal, a judge's bias must be extrajudicial and not based upon in-court rulings.' ") (quoting *Grider v. Boston Co. Inc.,* 773 S.W.2d 338, 346 (Tex.App.-Dallas 1989, writ denied), and citing *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

source, and the State has not disputed Kniatt's contention in his motion for rehearing that the assigned judge strictly applied the per se extrajudicial-source rule advocated by the State and found in *Kemp, Rosas,* and *Cumpian.*[6]

Kniatt's motion for rehearing asserts that the per se extrajudicial-source rule does not apply to questioned-impartiality and personal-knowledge claims. We agree in part and decline to follow *Harris* to the extent that it misstates current Texas law by relying on *Kemp* and *Rosas.*[7] *See Harris v. State,* 160 S.W.3d 621, 625 (Tex.App.-Waco 2005, pet. dism'd).[8] *Kemp* predated the Court of Criminal Appeals' adoption of Rule 18b and thus did not apply it,[9] and claims of questioned impartiality and personal knowledge under Rules 18b(2)(a) and 18b(2)(b) do not always require a showing of bias or partiality arising from an extrajudicial source. In *Kemp* the court considered a motion to recuse the trial judge because he had signed the search and arrest warrants for the defendant. Citing *McClenan v. State,* 661 S.W.2d 108, 109 (Tex.Crim.App.1983), *overruled on other*

*grounds by De Leon v. Aguilar,* 127 S.W.3d 1, 5 (Tex.Crim.App.2004), the defendant argued that judicial bias was a common-law basis for disqualification. The court responded:

A trial judge ruling on a motion alleging bias as a ground for disqualification must decide whether the movant has provided facts sufficient to establish that a reasonable man, knowing all the circumstances involved, would harbor doubts as to the impartiality of the trial judge. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157, 1165 (5th Cir.1982); *see also, McClenan, supra* at 109.... Moreover, it is beyond rational dispute that before alleged bias becomes sufficient to warrant the disqualification of a judge, it *"must stem from an extrajudicial source* and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).[10]

---

6. Based on the argument that the State was making, we believe that, in saying, "I have a narrow area in which I have to operate on these motions to recuse," the assigned judge was referring to the extrajudicial-source rule.

7. *Kemp v. State,* 846 S.W.2d 289 (Tex.Crim. App.1992).

8. In *Harris,* we relied on *Kemp* and *Rosas* (which also relied on *Kemp* ) to state that bias must be shown under Rule 18b(2)(a). *See Harris,* 160 S.W.3d at 625 (citing *Kemp,* 846 S.W.2d at 306, and *Rosas v. State,* 76 S.W.3d 771, 774 (Tex.App.-Houston [1st Dist.] 2002, no pet.)). But as Kniatt shows in his motion for rehearing, *Kemp* is not authoritative for the proposition that questioned impartiality under Rule 18b(2)(a) always requires a showing of bias arising from an extrajudicial source.

9. In 1993, the Court of Criminal Appeals held that the rules of civil procedure governing disqualification and recusal of judges (Rules

18a and 18b) apply in criminal cases. *Arnold v. State,* 853 S.W.2d 543, 544 (Tex.Crim.App. 1993); *see, e.g., Burkett v. State,* 196 S.W.3d 892, 896 (Tex.App.-Texarkana 2006, no pet.). Since the adoption of Rule 18b, it appears that the Court of Criminal Appeals has not considered whether bias arising from an extrajudicial source is necessary for a questioned-impartiality claim. Therefore, we will consider Rule 18b's history and the application of the extrajudicial-source rule in civil cases and in criminal actions in other intermediate appellate courts.

10. In *Grinnell,* the Supreme Court considered a statutory claim for recusal under a federal statute providing: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceed-

*Kemp*, 846 S.W.2d at 305–06 (emphasis added).[11]

*Questioned Impartiality*

The gist of Kniatt's recusal claim based on Judge Knize's questioned impartiality is that, based on Kniatt's allegations of Judge Knize's conduct and remarks at the pretrial hearing on December 7, 2001, a reasonable person might reasonably question Judge Knize's impartiality in hearing and ruling on Kniatt's habeas application.

Rule 18b(2)(a) plainly states that a "judge shall recuse himself in any proceeding in which ... his impartiality might reasonably be questioned." [12] Tex.R. Civ. P. 18b(2)(a). Texas cases almost unanimously state the following reasonable-person test for questioned impartiality: "In determining whether a judge's impartiality might be reasonably questioned so as to require recusal, the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge and the case, would have a reasonable doubt that the judge is actually impartial." *Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App.-Texarkana 2006, no pet.); *see also In re F.A.R.*, 2005 WL 181719, at *2 (Tex.

---

ing." *United States v. Grinnell Corp.*, 384 U.S. 563, 582 n. 12, 86 S.Ct. 1698, 1710 n. 12, 16 L.Ed.2d 778 (1966) (citing 28 U.S.C. § 144 (1964)). The Supreme Court held: "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 583, 86 S.Ct. at 1710. In *Liteky* the Supreme Court rejected what has been called the per se extrajudicial-source rule espoused in *Grinnell. See Liteky*, 510 U.S. at 554–55, 114 S.Ct. at 1157; *id.* at 557–58, 114 S.Ct. at 1158–59 (Kennedy, J., concurring) ("I agree with the Court insofar as it recognizes that there is no *per se* rule requiring that the alleged partiality arise from an extrajudicial source.... I agree, then, with the Court's rejection of the *per se* rule applied by the Court of Appeals, which provides that 'matters arising out of the course of judicial proceedings are not a proper basis for recusal' under § 455(a).").

**11.** In *Rosas*, the court, relying on *Kemp*, said that "the bias must have come from an extrajudicial source and result in an opinion on the merits of the case other than what the judge learned from participating in the case." *Rosas v. State*, 76 S.W.3d 771, 774 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (citing *Kemp*, 846 S.W.2d at 306).

**12.** Rule 18b was adopted in 1980 virtually verbatim from Canon 3(c) of the Texas Code of Judicial Conduct. *See In re K.E.M.*, 89 S.W.3d 814, 827 n. 15 (Tex.App.-Corpus Christi 2002, no pet.); *see also Rogers v. Brad-*

ley, 909 S.W.2d 872, 880 (Tex.1995) (Enoch, J., responding to Gammage, J.'s, declaration of recusal); *State ex rel. Millsap v. Lozano*, 692 S.W.2d 470, 478 (Tex.Crim.App.1985). Likewise, 28 U.S.C. § 455, the federal counterpart to Rule 18b(2)(a), was derived from the ABA's 1972 Model Code of Judicial Conduct and enacted in 1974. *See Rogers*, 909 S.W.2d at 880 (Enoch, J., responding to Gammage, J.'s, declaration of recusal); H.R.Rep. No. 93–1453 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6351, 6353. Section 455, the statute at issue in *Liteky*, provides in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C. § 455(a), (b)(1). Section 455(a) was intended not only to broaden the grounds for recusal, but to establish recusal grounds distinct from those based on "personal bias or prejudice" found in Section 455(b)(1). *See* H.R.Rep. No. 93–1453, *as reprinted in* 1974 U.S.C.C.A.N. at 6355 ("Subsection (b) of the amended statute sets forth specific situations or circumstances when the judge must disqualify himself. These specific situations in subsection (b) *are in addition to* the general standard set forth in subsection (a).") (emphasis added).

App.-Eastland Jan.13, 2005, no pet.) (mem. op.); *Mosley v. State*, 141 S.W.3d 816, 834 (Tex.App.-Texarkana 2004, pet. ref'd); *Sears v. Olivarez*, 28 S.W.3d 611, 615 (Tex. App.-Corpus Christi 2000, order) (citing *Rogers v. Bradley*, 909 S.W.2d 872, 880–81 (Tex.1995) (Enoch, J., responding to Gammage, J.'s, declaration of recusal)); *Kirby v. Chapman*, 917 S.W.2d 902, 908 (Tex. App.-Fort Worth 1996, no writ).

The U.S. Supreme Court grappled with the extrajudicial-source rule in *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The precise issue was whether the identical federal counterpart (28 U.S.C. § 455(a)) to Rule 18b(2)(a) was subject to the per se extrajudicial-source rule (or doctrine), as the Eleventh Circuit had held. *Id.* at 543, 114 S.Ct. at 1151 ("The Eleventh Circuit affirmed the convictions, agreeing with the District Court that 'matters arising out of the course of judicial proceedings are not a proper basis for recusal.' " (quoting *United States v. Liteky*, 973 F.2d 910, 910 (11th Cir.1992))). The Court first described the contours of the extrajudicial-source doctrine, which it described as being "more standard in its formulation than clear in its application." *Id.* at 544, 114 S.Ct. at 1152. After examining the history of the per se extrajudicial-source doctrine and its confinement to bias arising outside the judicial proceeding, the Court addressed its applicability to section 455(a), but in doing so, it redefined the "extrajudicial" (or "personal") aspect of the doctrine [13]:

It is true that a number of Courts of Appeals have relied upon the word "personal" in restricting § 144 to extrajudicial sources, .... And several cases have cited the absence of that word as a reason for excluding that restriction from § 455(a), .... It seems to us, however, that that mistakes the basis for the "extrajudicial source" doctrine.

. . .

In our view, the proper (though unexpressed) rationale for *Grinnell*, and the basis of the modern "extrajudicial source" doctrine, is not the statutory term "personal"—for several reasons. First and foremost, that explanation is simply not the semantic success it pretends to be. Bias and prejudice seem to us not divided into the "personal" kind, which is offensive, and the official kind, which is perfectly all right. As generally used, these are pejorative terms, describing dispositions that are never appropriate.... Secondly, interpreting the term "personal" to create a complete dichotomy between court-acquired and extrinsically acquired bias produces results so intolerable as to be absurd.

. . .

It seems to us that the origin of the "extrajudicial source" doctrine, and the key to understanding its flexible scope (or the so-called "exceptions" to it), is simply the pejorative connotation of the words "bias or prejudice." Not all unfavorable disposition towards an individual (or his case) is properly described by

---

**13.** *See Liteky*, 510 U.S. at 554, 114 S.Ct. at 1157 ("For all these reasons, we think that the 'extrajudicial source' doctrine, *as we have described it*, applies to § 455(a).") (emphasis added). Kniatt correctly notes that some Texas cases have either glossed over or missed *Liteky's* redefinition of "extrajudicial." *See, e.g., Barrientos v. Nava*, 94 S.W.3d 270, 291–92 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *cf. Sommers v. Concepcion*, 20 S.W.3d 27, 43–44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (quoting and discussing *Liteky* at length). We thus quote *Liteky* at length to emphasize its rejection of the per se rule and its adoption of a meaning of "extrajudicial" other than outside the judicial proceeding at hand.

those terms. One would not say, for example, that world opinion is biased or prejudiced against Adolf Hitler. The words connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts). The "extrajudicial source" doctrine is one application of this pejorativeness requirement to the terms "bias" and "prejudice" as they are used in §§ 144 and 455(b)(1) with specific reference to the work of judges.

. . .

It is wrong in theory, though it may not be too far off the mark as a practical matter, to suggest, as many opinions have, that "extrajudicial source" is the only basis for establishing disqualifying bias or prejudice. It is the only common basis, but not the exclusive one, since it is not the exclusive reason a predisposition can be wrongful or inappropriate. A favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment.

. . .

Recusal is required *whenever* there exists a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source. A similar "plain-language" argument could be made, however, with regard to §§ 144 and 455(b)(1): They apply *whenever* bias or prejudice exists, and not merely when it derives from an extrajudicial source. As we have described, the latter argument is invalid because the pejorative connotation of the terms "bias" and "prejudice" demands that they be applied only to judicial predispositions that go beyond what is normal and acceptable. We think there is an equivalent pejorative connotation, with equivalent consequences, to the term "partiality." . . . "Partiality" does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate.

*Id.* at 548–52, 114 S.Ct. at 1154–56.

After redefining and setting out these new contours for the extrajudicial-source "factor,"[14] the Court set forth rules for its application:

14. In further elucidation on the contours of the extrajudicial-source "doctrine," the Court narrowed it to "factor" status:

As we have described it, however, there is not much doctrine to the doctrine. The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for "bias or prejudice" recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for "bias or prejudice" recusal, since some opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) "extrajudicial source" factor, than of an "extrajudicial source" doctrine, in recusal jurisprudence.
*Id.* at 554–55, 114 S.Ct. at 1157.

First, judicial rulings alone **almost** never constitute a valid basis for a bias or partiality motion. *See United States v. Grinnell Corp.,* 384 U.S., at 583, 86 S.Ct., at 1710. In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. **Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.** Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, **ordinarily** do not support a bias or partiality challenge. **They** *may* **do so if they reveal an opinion that derives from an extrajudicial source; and they** *will* **do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible....** *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Id.* at 555–56, 114 S.Ct. at 1157 (bold emphases added).

In *Dow Chemical Co. v. Francis,* 46 S.W.3d 237 (Tex.2001), the Texas Supreme Court applied the *Liteky* construct.[15] *Id.* at 240. It has since been consistently applied in civil actions. *See, e.g., Trahan v. Lone Star Title Co. of El Paso, Inc.,* —— S.W.3d ——, ——, 2007 WL 2141902, at *2 (Tex.App.-El Paso July 26, 2007, pet. denied); *Drake v. Spriggs,* 2006 WL 3627716, at *4–5 (Tex.App.-Corpus Christi Dec.14, 2006, no pet.) (mem.op.); *Rymer v. Lewis,* 206 S.W.3d 732, 736 (Tex.App.-Dallas 2006, no pet.); *Burgess v. Feghhi,* 191 S.W.3d 411, 415 (Tex.App.-Tyler 2006, no pet.); *In re J.W.A.,* 2005 WL 2574024, at *2 (Tex. App.-Austin Oct.13, 2005, no pet.) (mem. op.); *In re M.C.M.,* 57 S.W.3d 27, 33–34 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Woodruff v. Wright,* 51 S.W.3d 727, 736 n. 6 (Tex.App.-Texarkana 2001, pet. denied). One court's partially correct restatement of *Liteky* makes clear that judicial remarks need not always arise from an extrajudicial source to support a recusal motion: "Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source; however, when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Barrientos v. Nava,* 94 S.W.3d 270, 292 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *see Markowitz v. Markowitz,* 118 S.W.3d 82, 87 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

---

**15.** Before the *Francis* decision, several cases applied all or part of *Liteky,* with the first and most-cited being *Ludlow v. DeBerry,* 959 S.W.2d at 271. *See also Sommers,* 20 S.W.3d at 41–44; *Chandler v. Chandler,* 991 S.W.2d 367, 385–86 (Tex.App.-El Paso 1999, pet. denied).

Most of the opinions in criminal appeals that have cited or applied *Liteky* have not been published,[16] and at least two published cases have recently followed or applied it in part. *See Abdygapparova v. State*, —— S.W.3d ——, ——, 2007 WL 3005280, at *3–4 (Tex.App.-San Antonio Oct.17, 2007, no pet. h.) ("the proponent must show a 'deep-seated favoritism or antagonism that would make fair judgment impossible' ") (quoting *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157); *Roman v. State*, 145 S.W.3d 316, 321–22 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd) ("If the alleged bias is not from an extra-judicial source, the only proper basis for recusal based on bias is a bias indicating a high degree of favoritism or antagonism.") (citing *Ludlow*, 959 S.W.2d at 271).

*Personal Knowledge of Disputed Evidentiary Facts*

The gist of Kniatt's recusal claim under Rule 18b(2)(b) is that Judge Knize gained personal knowledge of disputed evidentiary facts when Kniatt's former attorney (whom Kniatt had just terminated) and the prosecutor informed Judge Knize in an unrecorded and ex parte side-bar conversation (which Kniatt could not hear) at the bench either that Kniatt intended to reject the State's plea bargain offer or that Kniatt had reneged on a plea bargain agreement, and that Kniatt wanted to retain new counsel. Kniatt contends that, in receiving that information and immediately thereafter revoking Kniatt's bond and incarcerating Kniatt, Judge Knize obtained personal, extrajudicial knowledge of disputed evidentiary facts relating both as to whether and why Kniatt had reneged on a plea bargain agreement and as to Judge Knize's state of mind and predisposition toward Kniatt and Kniatt's guilty plea before Judge Knize a few days later. *See, e.g., Edgar v. K.L.*, 93 F.3d 256, 258–59 (7th Cir.1996).

Kniatt asserts that those disputed evidentiary facts are relevant to the issue of the voluntariness of Kniatt's guilty plea— the subject of his habeas application—and that Judge Knize must be recused from hearing and ruling on the habeas application. Kniatt further argues that testimony from Judge Knize about what he was told by the prosecutor and Kniatt's former attorney, about his remarks, and about the voluntariness of Kniatt's subsequent guilty plea would be needed at the hearing on his habeas application, and Judge Knize obviously could not be the arbiter of his own alleged misconduct that Kniatt alleges coerced an involuntary guilty plea. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 248 (Tex.1999).

■ On Kniatt's recusal claim under Rule 18b(2)(b), we agree with the Houston Fourteenth Court's analysis and application of *Liteky*:

The Texas cases discussing the extrajudicial source rule concern allegations of bias or partiality, rather than allegations of personal knowledge of disputed facts. *See, e.g., Grider*, 773 S.W.2d at 346. Although we have not located any Texas cases applying the extrajudicial source rule where the ground for recusal is personal knowledge of disputed facts, other jurisdictions have done so.[ ] Many of these cases distinguish between knowledge that is "personal" or gained extrajudicially, and knowledge that is

---

16. *See, e.g., Kimball v. State*, 2007 WL 1501129, at *1 (Tex.App.-Beaumont May 23, 2007, no pet.) (mem.op.) (not designated for publication); *Tatro v. State*, 2003 WL 1891656, at *10–11 (Tex.App.-Houston [1st Dist.] April 17, 2003, pet. ref'd) (not designated for publication); *Grimes v. State*, 2001 WL 633767, at *1 (Tex.App.-El Paso June 7, 2001, no pet.) (not designated for publication); *Easton v. State*, 2001 WL 1289945, at *4–5 (Tex. App.-Houston [14th Dist.] Oct. 25, 2001, pet. ref'd) (not designated for publication).

gained during case proceedings. The United States Supreme Court disagrees with the simple categorization of bias as "personal," which is offensive, and official, which is not. *See Liteky,* 510 U.S. at 549, 114 S.Ct. 1147, 127 L.Ed.2d 474....

We believe this reasoning is applicable to allegations of personal knowledge of disputed facts. Where a party alleges the judge possesses personal knowledge of disputed facts, the party must show that this knowledge either was wrongfully obtained or led to a wrongful disposition of the case.

*Sommers v. Concepcion,* 20 S.W.3d 27, 43–44 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (footnote omitted).

*Summary*

■ From the history of Rule 18b(2)(a) and from *Liteky* and its progeny, we are persuaded that Rule 18b(2)(a) does not require a showing of bias (partiality) arising from an extrajudicial source that is outside the judicial proceeding. Rather, when judicial conduct or remarks serve as the basis for a recusal motion, the movant is required to show a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157; *see, e.g., Rymer,* 206 S.W.3d at 734–36; *Scott v. State,* 110 Md.App. 464, 677 A.2d 1078, 1089–90 (Md. Ct.Spec.App.1996) (cited in *Sommers,* 20 S.W.3d at 44); *see also George v. State,* 20 S.W.3d 130, 138 (Tex.App.Houston [14th Dist.] 2000, pet. ref'd) ("Here, appellant attempted to show that the trial judge had not merely erred, but had purposefully intervened in the plea negotiations and by deliberate intimidation, coerced an involuntary plea. If true, these actions would cast serious doubt on the judge's suitability to impartially decide his request for a new trial."), *disapproved on other grounds*

by *Cooper v. State,* 45 S.W.3d 77 (Tex. Crim.App.2001).

We thus disagree with current case law in criminal actions (*e.g., Cumpian* and *Rosas,* discussed above) that require an extrajudicial source defined as a personal bias arising outside the judicial proceeding. Accordingly, based on the State's persistent arguments to the assigned judge (and to us) that only bias arising from an extrajudicial (outside) source could be the basis of Kniatt's recusal motion and on the assigned judge's comment that he had only a narrow area in which to rule, we hold that the assigned judge abused his discretion by misapplying or misinterpreting applicable recusal law.

And under Rule 18b(2)(b), the movant must show that the judges possession of personal knowledge of disputed evidentiary facts either was wrongfully obtained or led to a wrongful disposition of the case. *Sommers,* 20 S.W.3d at 44; *see, e.g., Edgar v. K.L.,* 93 F.3d at 258–59. An unfavorable predisposition towards a party arising from events occurring during judicial proceedings may nonetheless support recusal if "it is so extreme as to display a clear inability to render fair judgment." *Sommers,* 20 S.W.3d at 44 (quoting *Liteky,* 510 U.S. at 552, 114 S.Ct. at 1155).

### Harm

■ We have determined that the assigned judge abused his discretion in denying Kniatt's recusal motion by misapplying or misinterpreting applicable recusal law. We have not determined that the assigned judge abused his discretion in denying Kniatt's recusal motion under a correct application of recusal law. For this reason, it would be premature for us to decide whether a harm analysis is required and if so, what the test is and whether it was met.[17] Were we to give an impermissible advisory opinion on whether the assigned

17. Based on the following discussion from the

San Antonio Court of Appeals on a defen-

judge abused his discretion in denying Kniatt's recusal motion under the correct application of recusal law and whether that

error harmed Kniatt, we would be substituting ourselves into the assigned judge's place.

dant's complaint that the trial judge was not impartial by engaging in ex parte communications with the prosecutor, it would appear that court would hold that the erroneous denial of a motion to recuse defies a harm analysis:

> No matter what evidence is against a defendant, the United States Constitution guarantees the defendant the right to an impartial judge. *See Blue v. State,* 41 S.W.3d 129, 138 (Tex.Crim.App.2000) (Mansfield, J., concurring). The United States Supreme Court has repeatedly held that a violation of the right to an impartial judge is a structural error that defies harm analysis. *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Chapman v. California,* 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *see also Cain v. State,* 947 S.W.2d 262, 264 (Tex. Crim.App.1997) (acknowledging structural errors recognized by *Arizona*). The "presence on the bench of a judge who is not impartial" deprives a defendant of his basic protections and infects the entire trial process from beginning to end. *Arizona,* 499 U.S. at 309–10, 111 S.Ct. 1246; *see also Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The constitutional deprivation of an impartial judge affects the "framework within which the trial proceeds" and prevents the criminal trial from "reliably serv[ing] its function as a vehicle for determination of guilt or innocence." *Arizona,* 499 U.S. at 310, 111 S.Ct. 1246.
>
> . . .
>
> This is clearly a case in which the absence of an impartial trial judge on the bench infected the entire trial process, robbing Abdygapparova of her basic protections and undermining the ability of the criminal trial to reliably serve its function as a vehicle for the determination of guilt or innocence. *See Neder,* 527 U.S. at 8, 119 S.Ct. 1827; *Arizona,* 499 U.S. at 310, 111 S.Ct. 1246. Because "the right violated [in this case] was the right to an impartial

> judge, which is structural error, a harm analysis is not warranted." *Blue,* 41 S.W.3d at 139 (Mansfield, J., concurring).
>
> "No matter what the evidence was against [her], [Abdygapparova] had a right to an impartial judge." *Id.* at 138. Because the absence of an impartial judge on the bench infected the integrity of the trial process, the trial court's judgment is reversed, and the cause is remanded for a new trial.

*Abdygapparova v. State,* 2007 WL 3005280, at *13–14 (Tex.App.-San Antonio Oct.17, 2007, no pet. h.); *see also Miles v. State,* 204 S.W.3d 822, 826 (Tex.Crim.App.2006) ("The harmless-error rule may not be applied to" structural defect[s].... Examples of such "structural defects" include ... "partiality by the judge presiding over the trial, ..."); *cf. In re Union Pac. Resources Co.,* 969 S.W.2d 427, 428 (Tex.1998) ("If the appellate court determines that the judge presiding over the recusal hearing abused his or her discretion in denying the motion and the trial judge should have been recused, the appellate court can reverse the trial court's judgment and remand for a new trial before a different judge. This procedure is no different than the correction of any trial court error through the normal appellate process."); *De Leon v. Aguilar,* 127 S.W.3d 1, 6–7 (Tex.Crim.App.2004) ("Moreover, *McClenan* ... demonstrates that a trial judge's failure to comply with Rule 18a can be harmless where the record demonstrates that the trial judge was not biased. *See McClenan,* 661 S.W.2d at 111.... This rule, however, does not apply here because respondent's bias has been established as a matter of law. Any trial resulting in an appeal would be a waste of judicial resources because this is a structural error not subject to a harm analysis. *See Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (biased trial judge is structural error not subject to harm analysis)."). *But see Mosley v. State,* 141 S.W.3d 816, 837–39 (Tex. App.-Texarkana 2004, pet. ref'd) (ruling, albeit in apparent dicta, that three-part harm analysis applied if assigned judge erred in denying recusal motion).

## Conclusion

Because the trial judge abused his discretion by not correctly applying or interpreting recusal law, by separate order we grant the motion for rehearing in part and withdraw the Court's Opinion and judgment dated June 27, 2007. We abate this appeal and remand the cause to the trial court for a new hearing on Kniatt's recusal motion consistent with this opinion.[18]

The assigned judge shall conduct the hearing within forty-five days after the date of assignment. The trial court clerk and court reporter shall file supplemental records within thirty days after the date of the recusal hearing. If the assigned judge denies Kniatt's recusal motion, Kniatt's supplemental brief will be due twenty days after the supplemental records are filed. The State's supplemental brief will be due twenty days after Kniatt's supplemental brief is due or is filed, whichever occurs earliest.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting to Abatement Order on Remand.

The Court today announces a new rule regarding the recusal of trial court judges in criminal proceedings. In the process the Court overrules, though it will not use that term, recently decided precedent of this Court.

One of the most axiomatic tenets of the common law is that a rule or interpretation once decided should not be lightly overturned. *See Hammock v. State*, 46 S.W.3d 889, 892–93 (Tex.Crim.App.2001); *Awadelkariem v. State*, 974 S.W.2d 721, 725 (Tex.

Crim.App.1998). The Court does not properly analyze whether the prior case law should be overruled. I certainly find no compelling reason to do so in this appeal. Further, the Court purports to change the rule for all recusal proceedings in criminal proceedings in Texas by failing to follow existing precedent of the Court of Criminal Appeals, hoping that the rule it announces will be adopted by that court. I would leave the complaining party with the burden to secure a change in the common law through a petition for discretionary review with the Court of Criminal Appeals, and until the law is so changed, would apply the existing and announced law of this State. Finally, I would not make the change and then decide, on the thinnest of possible grounds, that the judge who considered and denied the recusal motion had abused his discretion. With these comments, I submit the following as my opinion, which is substantially the prior opinion of the Court, authored by Justice Vance, that is on this date being withdrawn. *See Kniatt v. State*, No. 10–03–00199–CR, 2007 Tex.App. LEXIS 5141 (Tex.App.-Waco June 27, 2007, no pet.), *withdrawn*, 239 S.W.3d 910, 2007 WL 4260155, 2007 Tex.App. LEXIS —— (Tex. App.-Waco Dec. 5, 2007, abatement order).

Appellant Nathan Kniatt was charged by indictment with possession of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 2003); *see id.* § 481.102(6) (Vernon Supp.2007). At a pretrial hearing on December 7, 2001, the trial court stated:

---

**18.** *See Ludlow*, 959 S.W.2d at 269 (appellate court abated appeal for another recusal hearing); *Ross v. State*, 947 S.W.2d 672, 673 (Tex. App.-Texarkana 1997, no pet.) (abating appeal for recusal hearing); *Sanchez v. State*, 926 S.W.2d 391, 396 (Tex.App.-El Paso 1996, pet. ref'd) (same); *Martin v. State*, 876 S.W.2d 396, 398 (Tex.App.-Fort Worth 1994, no pet.) (same); *see also In re K.K.*, 180 S.W.3d 681, 687 & n. 5 (Tex.App.-Waco 2005, order) (discussing numerous abatement-remand contexts in civil and criminals appeals); *Mendoza v. State*, 935 S.W.2d 501, 503–04 (Tex.App.-Waco 1996, order).

State versus Nathan Kniatt set for trial Monday morning. As I understand from the attorneys they thought they had a plea agreement. In fact, they did have a plea agreement, and today the defendant has reneged on that, doesn't want the agreement.

I've also been informed he wants to fire the lawyer. All that's okay with me. I'll take all this up. Defendant's bond is revoked. He's going to jail pending trial.

Have a seat over there, sir. We'll set your trial when we get around to it. (2 R.R. at 4.) On December 11, 2001, Kniatt returned to the trial court and entered a guilty plea. In accordance with the plea agreement, the trial court deferred adjudication of guilt, placed Kniatt on community supervision for three years, and assessed a fine of $3,000.

The State subsequently filed a motion to proceed with adjudication of Kniatt's guilt and to revoke his community supervision. Kniatt filed a pre-conviction Application for Writ of Habeas Corpus, and a Motion to Recuse Presiding Judge, Judge Gene Knize, from hearing that application or from hearing the State's motion to proceed with adjudication of guilt. A judge sitting by assignment denied the motion to recuse. Judge Knize heard the State's motion to adjudicate guilt on June 4, 2003, adjudicated Kniatt guilty, and, on June 19, 2003, denied Kniatt's habeas application on the merits.

Kniatt appealed the trial court's denial of his habeas application and the order denying his motion to recuse. A majority of this Court sustained his habeas issue and did not reach the recusal issue. *See Kniatt v. State*, 157 S.W.3d 83 (Tex.App.-Waco 2005), *rev'd*, 206 S.W.3d 657 (Tex. Crim.App.), *cert. denied*, —— U.S. ——, 127 S.Ct. 667, 166 L.Ed.2d 514 (2006). The Court of Criminal Appeals reversed this Court's judgment and remanded the cause for us to consider Kniatt's remaining claims. *Kniatt*, 206 S.W.3d at 665. On remand, Kniatt argues that the assigned judge erred in denying his motion to recuse Judge Knize.

### Recusal

Kniatt contends that the assigned judge committed reversible error by refusing to recuse Judge Knize under Rule 18b(2)(a) or (b). *See* Tex.R. Civ. P. 18b.

We review a ruling denying a defendant's motion to recuse for abuse of discretion. *Wesbrook v. State*, 29 S.W.3d 103, 120 (Tex.Crim.App.2000). A recusal decision should not be reversed if it is within the zone of reasonable disagreement. *Id.* at 120–21.

### Impartiality

When impartiality is the basis of the motion, recusal is appropriate if the movant shows that a reasonable person with knowledge of the circumstances would harbor doubts as to the impartiality of the trial court and shows that the bias is of such a nature and extent that allowing the judge to serve would deny the defendant's right to due process of law. *Harris v. State*, 160 S.W.3d 621, 625 (Tex.App.-Waco 2005, pet. dism'd) (citing *Kemp v. State*, 846 S.W.2d 289, 305 (Tex.Crim.App.1992)). Further, the bias must come from an extrajudicial source and result in an opinion on the merits of the case other than what the judge learned from participating in the case. *Rosas v. State*, 76 S.W.3d 771, 774 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Accordingly, a party challenging the denial of a motion to recuse must show that the trial court's bias arose from an extrajudicial source, not merely from actions during the trial court proceedings, unless those actions demonstrated a high degree of favoritism or antagonism that

would render fair judgment impossible. *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

The record does not support the claim of lack of impartiality. Generally, judicial remarks during a proceeding that are critical or even hostile to counsel, parties, or their cases, do not support recusal. *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex.App.-Houston [14th Dist.] 1997, no pet.) (op. on orig. submission). The complained-of act, Judge Knize's revoking Kniatt's bond in December 2001, does not show such a "high degree of favoritism or antagonism as to make fair judgment impossible" on Kniatt's habeas application in April 2003. *See id.* As the act took place during, and was part of, the judicial proceedings, Kniatt has failed to demonstrate an extrajudicial source of Judge Knize's alleged impartiality. Accordingly, Kniatt has failed to demonstrate an abuse of discretion on this issue.

### Personal Knowledge

Kniatt also argues that because his habeas application was partially based on the allegation that his 2001 plea was involuntary and because he believes Judge Knize "likely [had a] predisposition to find that [Kniatt] had been motivated by something other than a legitimate reason to plead not guilty," recusal was required because Judge Knize's "state of mind was tainted by 'personal knowledge of disputed evidentiary facts concerning the proceeding.'" (Kniatt Br. on Remand at 23 (quoting Tex.R. Civ. P. 18b(2)(b)).) He also argues that the extrajudicial source rule does not apply to the personal knowledge ground of recusal.

In *Sommers v. Concepcion*, the court, relying on *Liteky v. United States*, reasoned that "although a judge may be exceedingly ill-disposed towards a party af-

ter gaining knowledge of facts during the proceedings, the judge is not thereby recusable for bias or prejudice since the knowledge was acquired in the course of proceedings." *Sommers*, 20 S.W.3d at 44 (citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). The court held that where a party alleges that the judge possesses personal knowledge of disputed facts, the party must show that this knowledge was wrongfully obtained. *Sommers* at 44.

I would agree that the extrajudicial source rule applies to Rule 18b(2)(b) personal knowledge claims, and would find that Kniatt failed to show that Judge Knize obtained personal information from an extrajudicial source pertaining to the proceedings. Any knowledge that Judge Knize obtained about Kniatt's plea in this case is knowledge that he gained during the proceedings and not from any other source. Accordingly, I would overrule Kniatt's issue.

### Conclusion

I would, after overruling Kniatt's sole issue on remand, affirm the judgment of the trial court.