002-10-397-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.  02-10-00397-CR

 


 
 
 Keith L. McClellan
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

----------

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

Appellant
Keith L. McClellan appeals the trial court’s judgment adjudicating his guilt
and sentencing him to twenty years in prison.  Appellant raises two issues,
asserting that the trial court abused its discretion by admitting inadmissible
hearsay evidence and that his counsel was ineffective at the adjudication
hearing.  We affirm.

II. 
Procedural and Factual Background

          In
March 2005, a Tarrant County grand jury indicted Appellant on charges of
aggravated assault with a deadly weapon.  Pursuant to a plea bargain agreement,
the trial court placed Appellant on deferred adjudication community supervision
for five years beginning January 19, 2006.  In March 2010, the State filed a
petition to proceed to adjudication, alleging in eight paragraphs that Appellant
violated the terms and conditions of his community supervision.  The trial
court held a hearing on the State’s petition to adjudicate on July 7, 2010. 
Appellant pleaded “not true” to each allegation.

          At
the hearing, Sergeant Gregory Morgan testified that he was an investigator with
the Hamilton Sheriff’s Department in Cincinnati, Ohio, and that in January 2010
Appellant became a “target” in an on-going investigation of “a local group of
individuals that were taking stolen items in trade for heroin in Cincinnati.”[2] 
With the help of a confidential informant, officials recorded phone calls
Appellant made and received while in Cincinnati on January 12, 2010, in which
he offered to sell the informant heroin.  During these calls, the informant
asked for two ounces of heroin, and Appellant explained that he could sell him
a half ounce for $1000 and that another shipment would be arriving the next
day.  Appellant then told the informant he was on his way to meet him.  During
the phone calls, a team of narcotics officers was conducting surveillance
outside the Cincinnati residence where Appellant was staying.[3] 
When Appellant exited the residence and drove away, the narcotics team
followed.

 Cincinnati
Police Officer Chris Perry (assigned to this regional narcotics team) testified
that he stopped Appellant at the request of the surveillance team that same
day, arrested him, and transported him to the jail in the backseat of his
marked squad car.  Appellant possessed $2200 in cash upon arrest.[4] 
Officer Perry testified that during the drive, Appellant was moving around
quite a bit, including bending at the waist, and moving his feet around.  When
Officer Perry searched the car, he found a balled-up plastic baggie in a corner
of the floorboard that had not been there before Appellant’s arrest.  A chemist
with the Hamilton County crime laboratory determined the contents to be a half
ounce (14 grams) of heroin.

The
narcotics team executed a search warrant for the residence.  Cincinnati Police
Officer Paul Fangman testified that officers found a .50 caliber Desert Eagle
pistol (with a loaded magazine inside) under a couch cushion in the first floor
living room of the small, single-family, two-story residence.  Upstairs,
Officer Fangman found a .9 millimeter handgun on top of a nightstand in one of
two bedrooms.  In this bedroom, Officer Fangman found a portfolio of documents
on the floor containing Appellant’s birth certificate, bank statements in Appellant’s
name, numerous receipts (some showing partial credit card numbers that matched
Appellant’s credit card number), and additional personal paperwork, including
several documents regarding Appellant’s Tarrant County community supervision. 
Officer Fangman testified that it was very common for drug dealers to have firearms
because heroin is very expensive, and “[d]rug traffickers are — are afraid of
each other due to the fact that there’s often robberies involved between drug
dealers.  Other drug dealers know that — that they have something of value and
there’s much money to be made selling heroin.”  In the kitchen, officers found
a digital scale and small unused glassine bags.  Sergeant Morgan testified
that, based on his training and experience, these types of bags are used by
drug dealers in Cincinnati to distribute small amounts of heroin and cocaine,
and Officer Perry testified that both drug traffickers and drug abusers often
possess these types of scales.

Appellant’s
mother, Sandra McMorris, testified that Appellant is very intelligent and
bright, that she was upset that he got “caught up in this mess with some of his
friends,” and that “I really don’t believe that [Appellant] should serve a lot
of time, sir.  He’s a good boy.  He really is, and he’s been taking care of
me.”  McMorris testified that she and Appellant bought junk vehicles, fixed
them up, and sold them for a “nice profit.”  McMorris  acknowledged on
cross-examination, however, that she knew that the sheriff’s department in Ohio
had seized approximately one hundred thousand dollars from different bank
accounts belonging to Appellant, noting that “some of those bank accounts, I
know the money came from those sales of vehicles because I assisted in selling
some of those vehicles here in the state of Texas.”

The
trial court found six of the eight paragraphs in the petition true, adjudicated
Appellant guilty, and sentenced him to twenty years in prison.  The trial court
found four new-offense allegations to be true, including in part that on
January 12–13, 2010, in Ohio (Hamilton County) Appellant (1) altered,
destroyed, concealed, or removed heroin to impair its value or availability as
evidence in such proceeding or investigation, knowing that an official
proceeding or investigation was in progress or was about to be or likely to be
instituted (allegation one); (2) offered to sell fourteen grams of heroin
(allegation three); (3) knowingly prepared for shipment, shipped, transported,
delivered, or prepared for distribution fourteen grams of heroin, when he knew
or had reasonable cause to believe that the heroin was intended for sale or
resale by Appellant or another person (allegation four); and (4) knowingly
obtained, possessed or used fourteen grams of heroin (allegation five).  The trial court also found
that Appellant violated allegation seven by knowingly possessing a firearm away
from his residence on or about January 12, 2010.

III. 
Admissibility of Evidence

          In
his first issue, Appellant asserts that the trial court abused its discretion
by admitting and considering inadmissible hearsay.  Appellant complains of the trial
court’s admitting (1) several receipts from drug and grocery stores in
California showing the purchase of Bounce dryer sheets, Super Glue, “tubes,”
and “bottles” in October and November 2009 (State’s Exhibits 1–4); (2)
Greyhound Bus Line receipts and itineraries with Appellant’s name printed on
them for travel on August 28 and 29, 2009, from Dallas to Memphis to Nashville
to Cincinnati, and on September 5 and 6, 2009, from Cincinnati to Nashville to
Dallas (State’s Exhibits 5–12); and (3) invoices with Appellant’s name printed
on them from the Quality Inn in Petaluma, California from October 7 to October
12, 2009 (State’s Exhibits 21–23).  As the State notes, Appellant made hearsay
objections at various times to all of these exhibits.[5]

Appellant
contends that the challenged receipts were admitted for the truth of the matter
asserted—i.e, that Appellant purchased these items—and that Sergeant Morgan
“then used that information to testify why the items [Appellant] purchased were
important to the drug trade.”  Appellant maintains that the State used the
receipts to show he was a nationwide drug dealer and that this evidence led
directly to the trial court’s findings of “true” and the maximum sentence of
twenty years’ confinement.  Appellant refers to the trial court’s comment in
adjudicating his guilt that, “You knew when you started dealing drugs what you
were doing” and the State’s closing argument that Appellant is “a drug dealer. 
He’s now carried across three states.  And I suspect, based on the paperwork in
front of you, that he’s been going coast to coast with this.”

A. 
Applicable Law  

The
State has the burden to prove by a preponderance of the evidence the
allegations in a petition to proceed to adjudication.[6] 
See Rickels v. State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006);
Miles v. State, 343 S.W.3d 908, 912 (Tex. App.—Fort Worth 2011, no pet.). 
This standard is met when the greater weight of the credible evidence before
the trial court supports a reasonable belief that a condition of community
supervision has been violated.  Rickels, 202 S.W.3d at 763.  Thus, our
review of an order adjudicating guilt is limited to determining whether the
trial court abused its discretion by concluding that the appellant violated a
condition of his community supervision.  Id.; Miles, 343
S.W.3d at 912.  Proof of any one alleged violation is sufficient to
support an adjudication order.  Smith v. State, 286 S.W.3d 333, 342
(Tex. Crim. App. 2009); Leach v. State, 170 S.W.3d 669, 672 (Tex.
App.—Fort Worth 2005, pet. ref’d).  “To overturn a revocation order, a
defendant must successfully challenge each finding on which the revocation is
based.”  Harris v. State, 160 S.W.3d 621, 626 (Tex. App.—Waco 2005, pet.
dism’d) (citing Jones v State, 571 S.W.2d 191, 193–94 (Tex. Crim. App.
[Panel Op.] 1978)).  Once a trial court proceeds to adjudication of guilt
previously deferred, it is restricted in the sentence it imposes only by the
relevant statutory limits.  Von Schounmacher v. State, 5 S.W.3d 221, 223
(Tex. Crim. App. 1999); Kim v. State, 283 S.W.3d 473, 475 (Tex.
App.—Fort Worth 2009, pet. ref’d) (holding that punishment imposed within
statutory limits is generally not subject to excessiveness challenge).

B. 
Analysis

Assuming
without deciding that the trial court erred by admitting the challenged
receipts, the error was harmless because the remainder of the admissible
evidence was sufficient to support the trial court’s decision to revoke
Appellant’s community supervision, adjudicate his guilt, and sentence him to
twenty years in prison.  See Tex. R. App. P. 44.2(b) (providing that any
non-constitutional error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded); cf. Clay v. State,
No. 02-10-00490-CR, 2012 WL 503513, at *9 (Tex. App.—Fort Worth Feb. 16, 2012, no
pet. h.). (Dauphinot, J., dissenting) (“Because admissible evidence did not
otherwise satisfy the State’s burden of proof, I would hold harmful the trial
court’s error in admitting the documents purporting to come from the Louisiana
community supervision department and the testimony about them and further hold
that the trial court abused its discretion by adjudicating Appellant’s
guilt.”).

For
example, in support of its first allegation—that Appellant tampered with
evidence so that it would not be available as evidence—and its fifth
allegation—that Appellant possessed fourteen grams of heroin—the State
presented Officer Perry’s testimony that Appellant attempted to hide a package
(verified by a chemist to be heroin) in Officer Perry’s squad car that had not
been in the car prior to Appellant’s arrest.  In support of its third
allegation—that Appellant offered to sell fourteen grams of heroin—the State
presented tape recorded conversations between Appellant and a confidential
informant.  These same recorded conversations also supported the State’s fourth
allegation—that Appellant prepared heroin for shipment, transport, or
distribution—as did the following testimony:

A.  [Sergeant
Morgan]:  The CI made it very clear on the phone calls that we played that he
needed the drugs because he had clients that were wanting to purchase from him.

 

Q.  [State]:  This
wasn’t personal use.  He wanted to resell them?

 

A.  Oh, absolutely. 
And I think at one point in the recorded calls that [Appellant] wanted him to
hurry up and distribute that, collect his money, because he had a bigger load —
or I believe he called it “a boat” coming in the next day. 

 

Q.  Is it clear from
the phone calls that you heard and [Appellant] talking that he was knowingly
prepared for shipment, shipped, transported or delivered or prepared for
distribution a Schedule I controlled substance; to-wit, heroin, and he knew or
had reason to — cause to believe that the controlled substance was intended for
sell or resell [sic] by him or by somebody else?

 

A. 
Absolutely.

In
support of its seventh allegation—that Appellant violated his community
supervision by knowingly possessing a firearm away from his residence on or
about January 12, 2010—the State presented evidence that one of the two guns
found in the residence was in a bedroom containing Appellant’s birth
certificate and his community supervision paperwork.  Thus, the trial court’s
adjudication order is supported by admissible evidence that Appellant violated
several of the conditions of his community supervision, and Appellant does not
specifically challenge the trial court’s findings as to these allegations.  See
Smith, 286 S.W.3d at 342; Harris, 160 S.W.3d at 626.  Thus, the
record does not support Appellant’s assertion that the challenged receipts led
directly to the finding of “true” to the State’s allegations.

Additionally,
the record does not support Appellant’s assertion that the challenged receipts
and associated testimony—which he asserts were “the only evidence” the State
could produce showing he went to California, purchased masking agents, or
purchased bins to transport the drugs for distribution—led to the imposition of
the maximum sentence.  Appellant faced a possible sentence of twenty years’
imprisonment for the second-degree aggravated assault to which he pleaded
guilty, and the trial court assessed the maximum punishment.  See Tex.
Penal Code Ann. ' 12.33(a) (West 2011). 
Generally, as long as a sentence is within the statutory range of punishment
and has a factual basis in the record, it will not be disturbed on appeal.  Jackson
v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); see Freeman v.
State, No. 02-09-00093-CR, 2009 WL 4755169, at *3 (Tex. App.—Fort Worth Dec.
10, 2009, pet. ref’d) (mem. op., not designated for publication).

In
adjudicating Appellant’s guilt and sentencing him, the trial court stated,

[I]’m going to be
very blunt with you.  You knew what you were signing up for when you went onto
probation.  You knew when you started dealing drugs what you were doing.  You
knew the danger that you were facing by going out there and engaging in that
behavior.

 

          The .50
caliber gun, the gun in the house, the paperwork, the traveling, clearly
indicates that there is drug dealing on a level that is not normally seen
around here. It’s seen at a federal level, which they’re going to probably deal
with you there.[[7]]

 

[I]n terms of what we
do here, in terms of what we expect you to do when you signed up, when you pled
guilty to aggravated assault with a deadly weapon, that is all true.

 

          . . . . 

 

You
made this choice intelligently, voluntarily on your part and this is our
decision here with regard to your behavior here.

As demonstrated above, the
State introduced substantial evidence that Appellant was dealing drugs on a fairly
high level (at a minimum in Ohio) while on community supervision.  While the
trial court cited Appellant’s traveling as a part of its consideration, the
totality of the evidence supports the trial court’s sentence.  Moreover, Sergeant
Morgan provided unobjected-to testimony that Appellant travelled to and made
purchases related to his drug dealing in California.[8] 
For instance, he testified without objection that “[t]he receipts became
important because it gave us the travel receipts for the actual location at the
time that the receipts — the — the part of the country that the receipts were
taken at the time, which in this particular case we’re talking about
California.”  When asked whether the purchases and travel to California were
important, Sergeant Morgan testified without objection, “Absolutely. . . .
Because these are items that are consistent with our intel of someone that is
distributing narcotics across the country.”  Sergeant Morgan also testified
without objection that he found receipts from General Nutrition Center (GNC)
for big containers of bodybuilder powders and substances in the residence and
that he also found bodybuilding substances consistent with the GNC receipts. 
Without objection, Sergeant Morgan explained that “[t]he powder would be
removed from the container, a small portion, the narcotics placed inside, the
Super Glue would be used to seal the — the label to look unaltered if it was
inspected, sealed back up and shipped across the country.  The dryer sheets are
commonly used to mask agents — as a masking agent to mask the odor of
narcotic-detecting dogs.”

Because the trial court’s
sentence did not exceed the punishment range, and because it had a factual
basis in the record, we overrule Appellant’s first issue.  See Benjamin
v. State, No. 14-08-01012-CR, 2010 WL 307921, at *3 (Tex. App.—Houston
[14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication)
(considering that “Appellant’s behavior while he was on community supervision—continuing
his drug use, committing burglary, and failing to pay his court-ordered
fees—indicates a complete disregard for the terms of his community supervision”
in upholding trial court’s imposition of sentence); see also Smith, 286
S.W.3d at 344 (“[T]he decision of what punishment to assess after adjudicating
the defendant guilty is a purely normative process, not intrinsically
factbound, and is left to the unfettered discretion of the trial judge.”).

IV. 
Assistance of Counsel

In
his second issue, Appellant asserts that his counsel was ineffective during
closing argument by “admit[ting] the primary issue in the case;” i.e., that
Appellant possessed heroin.  Appellant asserts that this admission “forced the Trial
Court to find all of the State’s allegations concerning possession and delivery
of drugs and weapons to be true” and that the outcome of the case would have
been different if counsel had not admitted his guilt.  We disagree.

To
establish ineffective assistance of counsel Appellant must show by a preponderance
of the evidence that his counsel’s representation fell below the standard of
prevailing professional norms and that there is a reasonable probability that,
but for counsel’s deficiency, the result of the trial would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999).  Appellant has the burden to establish both of these prongs by a
preponderance of the evidence, and a failure to make either showing defeats an
ineffectiveness claim.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex.
Crim. App. 2002).  We presume that counsel’s conduct falls within the wide
range of reasonable professional assistance, and we will find counsel’s
performance deficient only if the conduct is so outrageous that no competent
attorney would have engaged in it.  Andrews v. State, 159 S.W.3d
98, 101 (Tex. Crim. App. 2005).

After
Appellant pleaded “not true” to the State’s first allegation, the prosecutor
interjected that Appellant had previously represented he would plead true to
the allegations and that therefore the State had not scheduled the Ohio chemist
(who tested the confiscated drugs) for the hearing.  The prosecutor explained
that he would need a continuance if Appellant persisted in contesting the
allegations.  Appellant’s counsel then recounted his statements to the
prosecutor that, “if you’re bringing one [witness], bring them all” and “we’ll
be willing to plead true if — if you’d offer us something.”  Counsel also
stated, “[W]hen the offer was 15 [years], I said, bring them all.”  When the
trial court asked Appellant’s counsel whether he was disputing that the
material seized in the Ohio patrol car was contraband, counsel stated, “Yeah .
. . we’re disputing everything.  .  .  [W]e tried to make an agreement
beforehand, and when it was clear there was never going to be anything that
would — I would consider a reasonable offer for any court in this courthouse, I
said, bring [on the witnesses].”  The trial court then proceeded with the
hearing, noting that the State could produce the chemist at a later time. 
Throughout the hearing, Appellant’s counsel appeared to vigorously challenge
the State’s evidence and defend Appellant’s interests.  After the State
presented several witnesses, the trial court granted the State’s motion for continuance. 
A month later, the hearing resumed, and Appellant’s counsel (with Appellant’s
express agreement) stipulated to the Hamilton County, Ohio, lab report, which
provided that the “brown solid material” contained in a plastic bag and
submitted for testing in the instant case was heroin and weighed 13.98 grams. 
The State subsequently rested its case, and Appellant’s counsel stated he would
present mitigation testimony.[9]  Appellant’s mother,
girlfriend, and cousin testified.  In closing argument, Appellant’s counsel
argued to the trial court (with the challenged portion of the argument
italicized) that, 

It was [Appellant’s]
intention all along to — to plead true to — to the possession.  And once this —
once this hearing got started — I wasn’t sure that he made — we had a tape with
maybe his voice on it with no one setting any kind [of] foundation for it of
the — the person who made the call and — and started this — and I say,
“entrapment.”  I don’t mean the legal reason but — the legal version — but to
talk to him in — into this deal — and is it him and I never [c]ould hear the
word “heroin.”  I never hear dollar amounts and they said, oh, he’s using code,
but I didn’t think that code’s explained sufficiently, and I couldn’t
understand what they were saying, anyway.  

 

          But at — at
[Appellant’s] request, he said — he said, [counsel], it was me, of course, it
was me.  And that — that’s what I was doing.  He doesn’t want me to — to — to
take that route where I’m contesting this whole thing.

 

          * * * *

 

          [Defense
Counsel]:  So since [Appellant is] — at his request, he’s — he’s admitting [to]
his possession of it, I’d like to draw your attention to — 

 

          THE COURT:  Okay,
now, let me —let me just stop you there.  Are you saying he wishes to change
his plea to true?

 

          [Defense Counsel]: 
No.  This is — this is just my argument. 

 

          THE COURT:  Well,
if you want to have — if you want to articulate that he wants to — he’s
pleading true or he’s admitting that, that’s one thing.  But if you’re — if he
isn’t willing to do that, I don’t think you can argue that, can you?

 

          [Defense Counsel]: 
I don’t know.

 

          THE COURT:  Okay. 
I’ll take whatever you say under advisement.   

 

[Defense Counsel]:  I
think it’s —okay.   I think it is true and I think it will be true.  

 

[Emphasis
added.]  Immediately thereafter, Appellant personally addressed the trial court
(with its permission):  

[W]hen I did get arrested
for this charge in Ohio, you know, my whole thing was, you know, I need some
help.

 

          . . . .

 

[I] know I hurt my
family and hurt myself, you know.  I mean, I don’t have any intentions on, you
know, playing any games.

 

          I come at
the mercy of the Court and I’m just petitioning for leniency.  I really was
trying to get some drug rehabilitation.  I never had drug rehab, you know. 
I’ve been using drugs since high school, you know.  I kicked the marijuana but
I’m going to need some help with the heroin because it’s not, you know, it’s
not as easy as I thought, you know.

Relying
on Long v. State and Hutchinson v. State, Appellant asserts that
a “stipulation or argument which destroys appellant’s only defense cannot be
classified as ‘trial strategy.’”  See Long, 764 S.W.2d 30, 31 (Tex.
App.—San Antonio 1989, pet. ref’d); Hutchinson, 663 S.W.2d 610, 613–15
(Tex. App.—Houston [1st Dist.] 1983, pet. ref’d).  In Long, trial
counsel presented an insanity defense but then stipulated to a police report
that showed that Long had become voluntarily intoxicated, thereby annulling his
defense strategy.  764 S.W.2d at 31.  The trial court then “expressly based its
rejection of appellant’s defense on the damaging stipulated statement regarding
voluntary intoxication.”  Id.  The Hutchinson case involved a
jury trial in which defense counsel presented no evidence in support of the
appellant’s guilt and then effectively “confessed the guilt of his client” by
stating in closing argument, “That’s the way the system works.  The prosecutor
brings you the evidence against him.  I bring you whatever evidence I have in
his favor.”  663 S.W.2d at 613 (finding ineffective assistance of counsel
because it was “obvious from the record that appellant’s counsel never intended
to present any defense to the drug charge and that the plea of not guilty was
never seriously urged”).

Unlike
in Long and Hutchinson, the record in the instant case does not
support Appellant’s ineffective assistance claim.  In personally addressing the
trial court, Appellant made admissions similar to the one he now criticizes his
counsel for making.  Notably, both counsel’s and Appellant’s admissions appear
to be strategic.  The record indicates that Appellant and his counsel grappled
with how best to approach the adjudication hearing and that during the
month-long break they determined that the best strategy was to request leniency
in the face of considerable evidence that Appellant violated several of the
conditions and terms of his community supervision, including that he committed
drug-related offenses in Ohio for which he was arrested and charged by
indictment.  See Wiley v. State, No. 13-11-00130-CR, 2012 WL 112805, at
*2–4 (Tex. App.—Corpus Christi Jan. 12, 2012, no pet.) (mem. op., not
designated for publication) (construing counsel’s argument that Wiley had “not
committed the crime of the century” as a request for lenience in the face of
what appeared to be overwhelming evidence of her violations).

Moreover,
the record indicates that counsel did not abandon his role as an advocate. 
Indeed, he argued that the State had not proven the seventh allegation—that
Appellant knowingly possessed a firearm—or the eighth allegation—that Appellant
failed to complete his minimum monthly number of hours of community service.  The
trial court found the eighth allegation to be “not true,” and also found “not
true” the sixth allegation—that Appellant failed to avoid injurious or vicious
habits on or about January 12, 2010.  Counsel also made several arguments
regarding why the trial court should sentence Appellant in the lower half of
the punishment range.  Without additional explanation, we cannot conclude trial
counsel pursued an unsound trial strategy.  See Thompson, 9 S.W.3d at
813–14.  Thus, Appellant fails to rebut the presumption that counsel made all
significant decisions in the exercise of reasonable professional judgment;
therefore, he fails to show that trial counsel’s performance fell below an
objective standard of reasonableness.  See Strickland, 466 U.S. at
687–88, 104 S. Ct. at 2064.

Additionally, the record does
not show that the outcome would have been different had counsel not made the
challenged argument.  Despite counsel’s admission, the State proved by a
preponderance of the evidence (separate and apart from any admissions by
Appellant’s counsel) that Appellant violated several of the terms and
conditions of his community supervision.  Further, in revoking Appellant’s
community supervision and imposing a twenty-year sentence, the trial court
emphasized its concern about Appellant’s drug dealing, of which there was an
abundance of evidence.  Based on the record before us, we cannot say that the
outcome of the proceeding would have been different if counsel had not admitted
to Appellant’s heroin possession.  We overrule Appellant’s second issue.

V. 
Conclusion

Having overruled Appellant’s two issues, we affirm the trial court’s
judgment.

 

ANNE GARDNER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:
 May 3, 2012









[1]See Tex. R. App. P. 47.4.





[2]Tarrant County Probation
Officer Loretta Wilson testified that she began supervising Appellant in March
2009, and that she issued a permit to Appellant to travel to Cincinnati, Ohio, in
January 2010, for the birth of his son.  She had previously issued permits for
Appellant to travel to Cincinnati in June, August, and October 2009.





[3]The confidential informant
told officials that Appellant was staying in the residence while in town; the
surveillance team saw Appellant go in and out of the residence; and inside the
residence officials found luggage, clothing big enough to fit Appellant’s
“large frame,” Appellant’s birth certificate, and paperwork regarding
Appellant’s Tarrant County community supervision.  There was also testimony that
other people had been seen inside the residence.





[4]Probation officer Wilson testified
that Appellant told her he was working forty hours a week at K & B Family
Cleaners for $9.00 an hour.





[5]The State asserts,
however, that the objections were untimely and that any error was cured when
Sergeant Morgan testified to the contents of the exhibits without objection.  Because
we determine that the admission of the receipts was harmless, we do not address
the State’s preservation arguments.





[6]The decision to proceed to
an adjudication of guilt and revoke deferred adjudication community supervision
is reviewable in the same manner as a revocation of ordinary community
supervision.  See Tex. Code Crim. Proc. Ann. art. 42.12, ' 5(b) (West Supp. 2011); Cantu
v. State, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.).





[7]Sergeant Morgan testified
that his narcotics task force worked on local and federal cases.  In closing
arguments, Appellant’s counsel argued to the court, “We also know that once
he’s done here, there’s a hold on him in Ohio . . . he’s going to be going
there doing — doing some sort of federal time.”





[8]See Chamberlain v.
State, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), cert. denied, 528
U.S. 1082 (2000) (overruling issue concerning admission of trial exhibit
because sponsoring witness testified about the information contained in the
exhibit without objection); see also Aranda v. State, No.
13-03-00302-CR, 2004 WL 5357628, at *2 (Tex. App.—Corpus Christi Nov. 18, 2004,
no pet.) (mem. op., not designated for publication) (holding any error in
admission of hearsay exhibit harmless because same information subsequently
introduced without objection).





[9]With the agreement of the
parties, the trial court heard both adjudication and mitigation evidence before
ruling and assessing punishment in a single proclamation.  See Hardeman v.
State, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999) (holding that defendant
does not have absolute right to separate punishment hearing but must have
opportunity to present mitigating evidence if that right was not afforded
during adjudication).  Thus, Appellant’s counsel was addressing both
adjudication and punishment in his closing argument.