

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-10-00397-CR

KEITH L. MCCLELLAN                                                           APPELLANT

V.

THE STATE OF TEXAS                                                                STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Keith L. McClellan appeals the trial court's judgment adjudicating his guilt and sentencing him to twenty years in prison. Appellant raises two issues, asserting that the trial court abused its discretion by admitting inadmissible hearsay evidence and that his counsel was ineffective at the adjudication hearing. We affirm.

## II. Procedural and Factual Background

----

[1]*See* Tex. R. App. P. 47.4.

In March 2005, a Tarrant County grand jury indicted Appellant on charges of aggravated assault with a deadly weapon. Pursuant to a plea bargain agreement, the trial court placed Appellant on deferred adjudication community supervision for five years beginning January 19, 2006. In March 2010, the State filed a petition to proceed to adjudication, alleging in eight paragraphs that Appellant violated the terms and conditions of his community supervision. The trial court held a hearing on the State's petition to adjudicate on July 7, 2010. Appellant pleaded "not true" to each allegation.

At the hearing, Sergeant Gregory Morgan testified that he was an investigator with the Hamilton Sheriff's Department in Cincinnati, Ohio, and that in January 2010 Appellant became a "target" in an on-going investigation of "a local group of individuals that were taking stolen items in trade for heroin in Cincinnati."[2] With the help of a confidential informant, officials recorded phone calls Appellant made and received while in Cincinnati on January 12, 2010, in which he offered to sell the informant heroin. During these calls, the informant asked for two ounces of heroin, and Appellant explained that he could sell him a half ounce for $1000 and that another shipment would be arriving the next day. Appellant then told the informant he was on his way to meet him. During the

---

[2]Tarrant County Probation Officer Loretta Wilson testified that she began supervising Appellant in March 2009, and that she issued a permit to Appellant to travel to Cincinnati, Ohio, in January 2010, for the birth of his son. She had previously issued permits for Appellant to travel to Cincinnati in June, August, and October 2009.

phone calls, a team of narcotics officers was conducting surveillance outside the Cincinnati residence where Appellant was staying.[3] When Appellant exited the residence and drove away, the narcotics team followed.

Cincinnati Police Officer Chris Perry (assigned to this regional narcotics team) testified that he stopped Appellant at the request of the surveillance team that same day, arrested him, and transported him to the jail in the backseat of his marked squad car. Appellant possessed $2200 in cash upon arrest.[4] Officer Perry testified that during the drive, Appellant was moving around quite a bit, including bending at the waist, and moving his feet around. When Officer Perry searched the car, he found a balled-up plastic baggie in a corner of the floorboard that had not been there before Appellant's arrest. A chemist with the Hamilton County crime laboratory determined the contents to be a half ounce (14 grams) of heroin.

The narcotics team executed a search warrant for the residence. Cincinnati Police Officer Paul Fangman testified that officers found a .50 caliber Desert Eagle pistol (with a loaded magazine inside) under a couch cushion in the

---

[3]The confidential informant told officials that Appellant was staying in the residence while in town; the surveillance team saw Appellant go in and out of the residence; and inside the residence officials found luggage, clothing big enough to fit Appellant's "large frame," Appellant's birth certificate, and paperwork regarding Appellant's Tarrant County community supervision. There was also testimony that other people had been seen inside the residence.

[4]Probation officer Wilson testified that Appellant told her he was working forty hours a week at K & B Family Cleaners for $9.00 an hour.

3

first floor living room of the small, single-family, two-story residence. Upstairs, Officer Fangman found a .9 millimeter handgun on top of a nightstand in one of two bedrooms. In this bedroom, Officer Fangman found a portfolio of documents on the floor containing Appellant's birth certificate, bank statements in Appellant's name, numerous receipts (some showing partial credit card numbers that matched Appellant's credit card number), and additional personal paperwork, including several documents regarding Appellant's Tarrant County community supervision. Officer Fangman testified that it was very common for drug dealers to have firearms because heroin is very expensive, and "[d]rug traffickers are — are afraid of each other due to the fact that there's often robberies involved between drug dealers. Other drug dealers know that — that they have something of value and there's much money to be made selling heroin." In the kitchen, officers found a digital scale and small unused glassine bags. Sergeant Morgan testified that, based on his training and experience, these types of bags are used by drug dealers in Cincinnati to distribute small amounts of heroin and cocaine, and Officer Perry testified that both drug traffickers and drug abusers often possess these types of scales.

Appellant's mother, Sandra McMorris, testified that Appellant is very intelligent and bright, that she was upset that he got "caught up in this mess with some of his friends," and that "I really don't believe that [Appellant] should serve a lot of time, sir. He's a good boy. He really is, and he's been taking care of me." McMorris testified that she and Appellant bought junk vehicles, fixed them

4

up, and sold them for a "nice profit." McMorris acknowledged on cross-examination, however, that she knew that the sheriff's department in Ohio had seized approximately one hundred thousand dollars from different bank accounts belonging to Appellant, noting that "some of those bank accounts, I know the money came from those sales of vehicles because I assisted in selling some of those vehicles here in the state of Texas."

The trial court found six of the eight paragraphs in the petition true, adjudicated Appellant guilty, and sentenced him to twenty years in prison. The trial court found four new-offense allegations to be true, including in part that on January 12–13, 2010, in Ohio (Hamilton County) Appellant (1) altered, destroyed, concealed, or removed heroin to impair its value or availability as evidence in such proceeding or investigation, knowing that an official proceeding or investigation was in progress or was about to be or likely to be instituted (allegation one); (2) offered to sell fourteen grams of heroin (allegation three); (3) knowingly prepared for shipment, shipped, transported, delivered, or prepared for distribution fourteen grams of heroin, when he knew or had reasonable cause to believe that the heroin was intended for sale or resale by Appellant or another person (allegation four); and (4) knowingly obtained, possessed or used fourteen grams of heroin (allegation five). The trial court also found that Appellant violated allegation seven by knowingly possessing a firearm away from his residence on or about January 12, 2010.

### III.  Admissibility of Evidence

In his first issue, Appellant asserts that the trial court abused its discretion by admitting and considering inadmissible hearsay. Appellant complains of the trial court's admitting (1) several receipts from drug and grocery stores in California showing the purchase of Bounce dryer sheets, Super Glue, "tubes," and "bottles" in October and November 2009 (State's Exhibits 1–4); (2) Greyhound Bus Line receipts and itineraries with Appellant's name printed on them for travel on August 28 and 29, 2009, from Dallas to Memphis to Nashville to Cincinnati, and on September 5 and 6, 2009, from Cincinnati to Nashville to Dallas (State's Exhibits 5–12); and (3) invoices with Appellant's name printed on them from the Quality Inn in Petaluma, California from October 7 to October 12, 2009 (State's Exhibits 21–23). As the State notes, Appellant made hearsay objections at various times to all of these exhibits.[5]

Appellant contends that the challenged receipts were admitted for the truth of the matter asserted—i.e, that Appellant purchased these items—and that Sergeant Morgan "then used that information to testify why the items [Appellant] purchased were important to the drug trade." Appellant maintains that the State used the receipts to show he was a nationwide drug dealer and that this evidence led directly to the trial court's findings of "true" and the maximum sentence of twenty years' confinement. Appellant refers to the trial court's

---

[5]The State asserts, however, that the objections were untimely and that any error was cured when Sergeant Morgan testified to the contents of the exhibits without objection. Because we determine that the admission of the receipts was harmless, we do not address the State's preservation arguments.

comment in adjudicating his guilt that, "You knew when you started dealing drugs what you were doing" and the State's closing argument that Appellant is "a drug dealer. He's now carried across three states. And I suspect, based on the paperwork in front of you, that he's been going coast to coast with this."

## A. Applicable Law

The State has the burden to prove by a preponderance of the evidence the allegations in a petition to proceed to adjudication.[6] *See Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Miles v. State*, 343 S.W.3d 908, 912 (Tex. App.—Fort Worth 2011, no pet.). This standard is met when the greater weight of the credible evidence before the trial court supports a reasonable belief that a condition of community supervision has been violated. *Rickels*, 202 S.W.3d at 763. Thus, our review of an order adjudicating guilt is limited to determining whether the trial court abused its discretion by concluding that the appellant violated a condition of his community supervision. *Id*.; *Miles*, 343 S.W.3d at 912. Proof of any *one* alleged violation is sufficient to support an adjudication order. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd). "To overturn a revocation order, a defendant must successfully challenge each

---

[6]The decision to proceed to an adjudication of guilt and revoke deferred adjudication community supervision is reviewable in the same manner as a revocation of ordinary community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp. 2011); *Cantu v. State*, 339 S.W.3d 688, 691 (Tex. App.—Fort Worth 2011, no pet.).

finding on which the revocation is based." *Harris v. State*, 160 S.W.3d 621, 626 (Tex. App.—Waco 2005, pet. dism'd) (citing *Jones v State*, 571 S.W.2d 191, 193–94 (Tex. Crim. App. [Panel Op.] 1978)). Once a trial court proceeds to adjudication of guilt previously deferred, it is restricted in the sentence it imposes only by the relevant statutory limits. *Von Schounmacher v. State*, 5 S.W.3d 221, 223 (Tex. Crim. App. 1999); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding that punishment imposed within statutory limits is generally not subject to excessiveness challenge).

## B. Analysis

Assuming without deciding that the trial court erred by admitting the challenged receipts, the error was harmless because the remainder of the admissible evidence was sufficient to support the trial court's decision to revoke Appellant's community supervision, adjudicate his guilt, and sentence him to twenty years in prison. *See* Tex. R. App. P. 44.2(b) (providing that any non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded); *cf. Clay v. State*, No. 02-10-00490-CR, 2012 WL 503513, at *9 (Tex. App.—Fort Worth Feb. 16, 2012, no pet. h.). (Dauphinot, J., dissenting) ("Because admissible evidence did not otherwise satisfy the State's burden of proof, I would hold harmful the trial court's error in admitting the documents purporting to come from the Louisiana community supervision department and the testimony about them and further hold that the trial court abused its discretion by adjudicating Appellant's guilt.").

For example, in support of its first allegation—that Appellant tampered with evidence so that it would not be available as evidence—and its fifth allegation—that Appellant possessed fourteen grams of heroin—the State presented Officer Perry's testimony that Appellant attempted to hide a package (verified by a chemist to be heroin) in Officer Perry's squad car that had not been in the car prior to Appellant's arrest. In support of its third allegation—that Appellant offered to sell fourteen grams of heroin—the State presented tape recorded conversations between Appellant and a confidential informant. These same recorded conversations also supported the State's fourth allegation—that Appellant prepared heroin for shipment, transport, or distribution—as did the following testimony:

> A. [Sergeant Morgan]: The CI made it very clear on the phone calls that we played that he needed the drugs because he had clients that were wanting to purchase from him.
>
> Q. [State]: This wasn't personal use. He wanted to resell them?
>
> A. Oh, absolutely. And I think at one point in the recorded calls that [Appellant] wanted him to hurry up and distribute that, collect his money, because he had a bigger load — or I believe he called it "a boat" coming in the next day.
>
> Q. Is it clear from the phone calls that you heard and [Appellant] talking that he was knowingly prepared for shipment, shipped, transported or delivered or prepared for distribution a Schedule I controlled substance; to-wit, heroin, and he knew or had reason to — cause to believe that the controlled substance was intended for sell or resell [sic] by him or by somebody else?
>
> A. Absolutely.

9

In support of its seventh allegation—that Appellant violated his community supervision by knowingly possessing a firearm away from his residence on or about January 12, 2010—the State presented evidence that one of the two guns found in the residence was in a bedroom containing Appellant's birth certificate and his community supervision paperwork. Thus, the trial court's adjudication order is supported by admissible evidence that Appellant violated several of the conditions of his community supervision, and Appellant does not specifically challenge the trial court's findings as to these allegations. *See Smith*, 286 S.W.3d at 342; *Harris*, 160 S.W.3d at 626. Thus, the record does not support Appellant's assertion that the challenged receipts led directly to the finding of "true" to the State's allegations.

Additionally, the record does not support Appellant's assertion that the challenged receipts and associated testimony—which he asserts were "the only evidence" the State could produce showing he went to California, purchased masking agents, or purchased bins to transport the drugs for distribution—led to the imposition of the maximum sentence. Appellant faced a possible sentence of twenty years' imprisonment for the second-degree aggravated assault to which he pleaded guilty, and the trial court assessed the maximum punishment. *See* Tex. Penal Code Ann. § 12.33(a) (West 2011). Generally, as long as a sentence is within the statutory range of punishment and has a factual basis in the record, it will not be disturbed on appeal. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *see Freeman v. State*, No. 02-09-00093-CR, 2009 WL

10

4755169, at *3 (Tex. App.—Fort Worth Dec. 10, 2009, pet. ref'd) (mem. op., not designated for publication).

In adjudicating Appellant's guilt and sentencing him, the trial court stated,

[I]'m going to be very blunt with you. You knew what you were signing up for when you went onto probation. You knew when you started dealing drugs what you were doing. You knew the danger that you were facing by going out there and engaging in that behavior.

The .50 caliber gun, the gun in the house, the paperwork, the traveling, clearly indicates that there is drug dealing on a level that is not normally seen around here. It's seen at a federal level, which they're going to probably deal with you there.[7]

[I]n terms of what we do here, in terms of what we expect you to do when you signed up, when you pled guilty to aggravated assault with a deadly weapon, that is all true.

. . . .

You made this choice intelligently, voluntarily on your part and this is our decision here with regard to your behavior here.

As demonstrated above, the State introduced substantial evidence that Appellant was dealing drugs on a fairly high level (at a minimum in Ohio) while on community supervision. While the trial court cited Appellant's traveling as a part of its consideration, the totality of the evidence supports the trial court's sentence. Moreover, Sergeant Morgan provided unobjected-to testimony that Appellant travelled to and made purchases related to his drug dealing in

---

[7]Sergeant Morgan testified that his narcotics task force worked on local and federal cases. In closing arguments, Appellant's counsel argued to the court, "We also know that once he's done here, there's a hold on him in Ohio . . . he's going to be going there doing — doing some sort of federal time."

11

California.[8]  For instance, he testified without objection that "[t]he receipts became important because it gave us the travel receipts for the actual location at the time that the receipts — the — the part of the country that the receipts were taken at the time, which in this particular case we're talking about California." When asked whether the purchases and travel to California were important, Sergeant Morgan testified without objection, "Absolutely. . . . Because these are items that are consistent with our intel of someone that is distributing narcotics across the country."  Sergeant Morgan also testified without objection that he found receipts from General Nutrition Center (GNC) for big containers of bodybuilder powders and substances in the residence and that he also found bodybuilding substances consistent with the GNC receipts.  Without objection, Sergeant Morgan explained that "[t]he powder would be removed from the container, a small portion, the narcotics placed inside, the Super Glue would be used to seal the — the label to look unaltered if it was inspected, sealed back up and shipped across the country.  The dryer sheets are commonly used to mask agents — as a masking agent to mask the odor of narcotic-detecting dogs."

---

[8]*See Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000) (overruling issue concerning admission of trial exhibit because sponsoring witness testified about the information contained in the exhibit without objection); *see also Aranda v. State*, No. 13-03-00302-CR, 2004 WL 5357628, at *2 (Tex. App.—Corpus Christi Nov. 18, 2004, no pet.) (mem. op., not designated for publication) (holding any error in admission of hearsay exhibit harmless because same information subsequently introduced without objection).

Because the trial court's sentence did not exceed the punishment range, and because it had a factual basis in the record, we overrule Appellant's first issue. *See Benjamin v. State*, No. 14-08-01012-CR, 2010 WL 307921, at *3 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op., not designated for publication) (considering that "Appellant's behavior while he was on community supervision—continuing his drug use, committing burglary, and failing to pay his court-ordered fees—indicates a complete disregard for the terms of his community supervision" in upholding trial court's imposition of sentence); *see also Smith*, 286 S.W.3d at 344 ("[T]he decision of what punishment to assess after adjudicating the defendant guilty is a purely normative process, not intrinsically factbound, and is left to the unfettered discretion of the trial judge.").

## IV. Assistance of Counsel

In his second issue, Appellant asserts that his counsel was ineffective during closing argument by "admit[ting] the primary issue in the case;" i.e., that Appellant possessed heroin. Appellant asserts that this admission "forced the Trial Court to find all of the State's allegations concerning possession and delivery of drugs and weapons to be true" and that the outcome of the case would have been different if counsel had not admitted his guilt. We disagree.

To establish ineffective assistance of counsel Appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable

13

probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Appellant has the burden to establish both of these prongs by a preponderance of the evidence, and a failure to make either showing defeats an ineffectiveness claim. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005).

After Appellant pleaded "not true" to the State's first allegation, the prosecutor interjected that Appellant had previously represented he would plead true to the allegations and that therefore the State had not scheduled the Ohio chemist (who tested the confiscated drugs) for the hearing. The prosecutor explained that he would need a continuance if Appellant persisted in contesting the allegations. Appellant's counsel then recounted his statements to the prosecutor that, "if you're bringing one [witness], bring them all" and "we'll be willing to plead true if — if you'd offer us something." Counsel also stated, "[W]hen the offer was 15 [years], I said, bring them all." When the trial court asked Appellant's counsel whether he was disputing that the material seized in the Ohio patrol car was contraband, counsel stated, "Yeah . . . we're disputing

14

everything. . . [W]e tried to make an agreement beforehand, and when it was clear there was never going to be anything that would — I would consider a reasonable offer for any court in this courthouse, I said, bring [on the witnesses]." The trial court then proceeded with the hearing, noting that the State could produce the chemist at a later time. Throughout the hearing, Appellant's counsel appeared to vigorously challenge the State's evidence and defend Appellant's interests. After the State presented several witnesses, the trial court granted the State's motion for continuance. A month later, the hearing resumed, and Appellant's counsel (with Appellant's express agreement) stipulated to the Hamilton County, Ohio, lab report, which provided that the "brown solid material" contained in a plastic bag and submitted for testing in the instant case was heroin and weighed 13.98 grams. The State subsequently rested its case, and Appellant's counsel stated he would present mitigation testimony.[9] Appellant's mother, girlfriend, and cousin testified. In closing argument, Appellant's counsel argued to the trial court (with the challenged portion of the argument italicized) that,

> It was [Appellant's] intention all along to — to plead true to — to the possession. And once this — once this hearing got started — I

---

[9]With the agreement of the parties, the trial court heard both adjudication and mitigation evidence before ruling and assessing punishment in a single proclamation. *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999) (holding that defendant does not have absolute right to separate punishment hearing but must have opportunity to present mitigating evidence if that right was not afforded during adjudication). Thus, Appellant's counsel was addressing both adjudication and punishment in his closing argument.

15

wasn't sure that he made — we had a tape with maybe his voice on it with no one setting any kind [of] foundation for it of the — the person who made the call and — and started this — and I say, "entrapment." I don't mean the legal reason but — the legal version — but to talk to him in — into this deal — and is it him and I never [c]ould hear the word "heroin." I never hear dollar amounts and they said, oh, he's using code, but I didn't think that code's explained sufficiently, and I couldn't understand what they were saying, anyway.

But at — at [Appellant's] request, he said — he said, [counsel], it was me, of course, it was me. And that — that's what I was doing. He doesn't want me to — to — to take that route where I'm contesting this whole thing.

\* \* \* \*

[Defense Counsel]: *So since [Appellant is] — at his request, he's — he's admitting [to] his possession of it, I'd like to draw your attention to —*

THE COURT: *Okay, now, let me —let me just stop you there. Are you saying he wishes to change his plea to true?*

[Defense Counsel]: *No. This is — this is just my argument.*

THE COURT: *Well, if you want to have — if you want to articulate that he wants to — he's pleading true or he's admitting that, that's one thing. But if you're — if he isn't willing to do that, I don't think you can argue that, can you?*

[Defense Counsel]: *I don't know.*

THE COURT: *Okay. I'll take whatever you say under advisement.*

[Defense Counsel]: I think it's —okay. I think it is true and I think it will be true.

[Emphasis added.] Immediately thereafter, Appellant personally addressed the trial court (with its permission):

16

[W]hen I did get arrested for this charge in Ohio, you know, my whole thing was, you know, I need some help.

. . . .

[I] know I hurt my family and hurt myself, you know. I mean, I don't have any intentions on, you know, playing any games.

I come at the mercy of the Court and I'm just petitioning for leniency. I really was trying to get some drug rehabilitation. I never had drug rehab, you know. I've been using drugs since high school, you know. I kicked the marijuana but I'm going to need some help with the heroin because it's not, you know, it's not as easy as I thought, you know.

Relying on *Long v. State* and *Hutchinson v. State*, Appellant asserts that a "stipulation or argument which destroys appellant's only defense cannot be classified as 'trial strategy.'" *See Long*, 764 S.W.2d 30, 31 (Tex. App.—San Antonio 1989, pet. ref'd); *Hutchinson*, 663 S.W.2d 610, 613–15 (Tex. App.—Houston [1st Dist.] 1983, pet. ref'd). In *Long*, trial counsel presented an insanity defense but then stipulated to a police report that showed that Long had become voluntarily intoxicated, thereby annulling his defense strategy. 764 S.W.2d at 31. The trial court then "expressly based its rejection of appellant's defense on the damaging stipulated statement regarding voluntary intoxication." *Id.* The *Hutchinson* case involved a jury trial in which defense counsel presented no evidence in support of the appellant's guilt and then effectively "confessed the guilt of his client" by stating in closing argument, "That's the way the system works. The prosecutor brings you the evidence against him. I bring you whatever evidence I have in his favor." 663 S.W.2d at 613 (finding ineffective

17

assistance of counsel because it was "obvious from the record that appellant's counsel never intended to present any defense to the drug charge and that the plea of not guilty was never seriously urged").

Unlike in *Long* and *Hutchinson*, the record in the instant case does not support Appellant's ineffective assistance claim. In personally addressing the trial court, Appellant made admissions similar to the one he now criticizes his counsel for making. Notably, both counsel's and Appellant's admissions appear to be strategic. The record indicates that Appellant and his counsel grappled with how best to approach the adjudication hearing and that during the month-long break they determined that the best strategy was to request leniency in the face of considerable evidence that Appellant violated several of the conditions and terms of his community supervision, including that he committed drug-related offenses in Ohio for which he was arrested and charged by indictment. *See Wiley v. State*, No. 13-11-00130-CR, 2012 WL 112805, at *2–4 (Tex. App.—Corpus Christi Jan. 12, 2012, no pet.) (mem. op., not designated for publication) (construing counsel's argument that Wiley had "not committed the crime of the century" as a request for lenience in the face of what appeared to be overwhelming evidence of her violations).

Moreover, the record indicates that counsel did not abandon his role as an advocate. Indeed, he argued that the State had not proven the seventh allegation—that Appellant knowingly possessed a firearm—or the eighth allegation—that Appellant failed to complete his minimum monthly number of

18

hours of community service. The trial court found the eighth allegation to be "not true," and also found "not true" the sixth allegation—that Appellant failed to avoid injurious or vicious habits on or about January 12, 2010. Counsel also made several arguments regarding why the trial court should sentence Appellant in the lower half of the punishment range. Without additional explanation, we cannot conclude trial counsel pursued an unsound trial strategy. *See Thompson*, 9 S.W.3d at 813–14. Thus, Appellant fails to rebut the presumption that counsel made all significant decisions in the exercise of reasonable professional judgment; therefore, he fails to show that trial counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064.

Additionally, the record does not show that the outcome would have been different had counsel not made the challenged argument. Despite counsel's admission, the State proved by a preponderance of the evidence (separate and apart from any admissions by Appellant's counsel) that Appellant violated several of the terms and conditions of his community supervision. Further, in revoking Appellant's community supervision and imposing a twenty-year sentence, the trial court emphasized its concern about Appellant's drug dealing, of which there was an abundance of evidence. Based on the record before us, we cannot say that the outcome of the proceeding would have been different if counsel had not admitted to Appellant's heroin possession. We overrule Appellant's second issue.

## V. Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 3, 2012